[Cite as *State v. Wine*, 2012-Ohio-2837.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO. 2-12-01

    v.

DOUGLAS J. WINE,                    O P I N I O N

    DEFENDANT-APPELLANT.

**Appeal from Auglaize County Common Pleas Court**
**Trial Court No. 2011-CR-26**

**Judgment Vacated and Cause Remanded**

**Date of Decision: June 25, 2012**

APPEARANCES:

    *Lorin J. Zaner* **for Appellant**

    *Edwin A. Pierce* **for Appellee**

**PRESTON, J.**

{¶1} Defendant-appellant, Douglas J. Wine ("Wine"), appeals the Auglaize County Court of Common Pleas' judgment entry of conviction and sentence. Since the State presented insufficient evidence that Wine purposely compelled the victim to submit to the sexual contact by force or threat of force, we vacate Wine's conviction and sentence for gross sexual imposition in violation of R.C. 2907.05(A)(1). Nevertheless, since the State presented sufficient evidence to demonstrate a violation of the lesser-included offense of sexual imposition in violation of R.C. 2907.06(A)(1), we remand this matter to the trial court to enter a finding of guilt and to sentence Wine on that offense.

{¶2} On February 4, 2011, the Auglaize County Grand Jury indicted Wine for rape in violation of R.C. 2907.02(A)(2), a first degree felony. (Doc. No. 1). Wine filed a written plea of not guilty on February 15, 2011. (Doc. No. 25).

{¶3} On April 4, 2011, Wine filed a motion in limine/motion to suppress a privately administered polygraph examination. (Doc. No. 36). On April 18, 2011, Wine filed a supplemental motion in limine/motion to suppress the polygraph examination. (Doc. No. 41).

{¶4} On May 2, 2011, the State filed a memorandum in opposition, arguing that the results of the polygraph examination were inadmissible absent a joint

stipulation of the parties, but Wine's admissions made during pre and post-polygraph interviews were admissible. (Doc. No. 43).

{¶5} On May 16, 2011, the trial court held a hearing on the motion. On June 22, 2011, the trial court denied the motion, finding that the State did not seek admission of the polygraph test results but admission of statements Wine made during the examination, which were admissible under Evid.R. 801(D)(2). (Doc. No. 60). The trial court further noted that neither side was permitted to use the results of the polygraph examination. (*Id*.).[1]

{¶6} On October 21, 2011, Wine filed a motion in limine to exclude from evidence any portion of his December 23, 2010 interview with Detective Sawmiller not relevant to the case. (Doc. No. 117).

{¶7} On October 25, 2011, the matter proceeded to a jury trial. At the beginning of the trial, the parties presented the trial court with two stipulations concerning the contents of the video of Wine's polygraph examination (State's Ex. 5) and Wine's December 23, 2010 interview with Sawmiller (State's Ex. 6). After entering the stipulations upon the record, Wine withdrew his motion in limine. (Oct. 25, 2011 Tr. at 6-8).

---

[1] On July 1, 2011, the trial court vacated this order due to an administrative error in the manner of executing the journal entry, but the trial court reissued its ruling denying the motion in limine/motion to suppress for the same reasons previously stated in its June 22nd order. (Doc. No. 64).

{¶8} Only the victim, S.D., testified concerning the sexual assault. S.D. testified that she was 71 years old and is married to Cecil. (Oct. 25-28, 2011 Tr. at 187). She testified that Cecil and she have four children, including a daughter, Clarinda, who is married to the defendant, Wine. (*Id*. at 187-188). S.D. testified that Wine and Clarinda have three children: Jalyn, the oldest; Jordan, the middle child; and, Jillian Lee, the youngest. (*Id*. at 188, 200). S.D. testified that, late September to mid-October 2009, Cecil and she stayed with their grandchildren in Marysville, Ohio while Clarinda and Wine vacationed in Hawaii. (*Id*. at 190, 192). S.D. testified that Cecil and she arrived at their grandchildren's home on September 27, 2009, and they stayed in their RV until the early morning hours of October 1, 2009 when Clarinda and Wine left for Hawaii. (*Id*. at 191-195). S.D. testified that, while Cecil and she stayed at the house, they slept in Jillian's bedroom; Jordan and Jalyn slept in their own bedrooms; and many nights S.D. slept with Jillian in the master bedroom since Jillian did not want to sleep by herself. (*Id*. at 199). S.D. testified that, if Jillian would fall asleep, she would sleep with Cecil in Jillian's bedroom; otherwise, she would sleep with Jillian in the master bedroom. (*Id*. at 200).

{¶9} S.D. testified that Wine and Clarinda returned from Hawaii between 8:30 p.m. and 9:00 p.m. on Monday, October 12, 2009. (*Id*. at 195, 198). S.D. testified that the kids were excited about their parents returning home, and

-4-

Clarinda and Wine gave each of the kids and her and her husband gifts. (*Id*. at 198). S.D. testified that they all were getting ready for bed that evening when Jordan and Jillian went into Jillian's bedroom to hear Cecil tell them a story about Florida. (*Id*. at 200-201). When Cecil ended his story around 11:00 p.m., Jordan asked S.D. to tell him another story before he went to sleep since it was her last night there. (*Id*. at 201, 204). S.D. testified that she was planning on telling Jordan a story and leaving the bedroom after Jordan fell asleep, but both of them fell asleep in the bed. (*Id*. at 202-203). S.D. testified that she was on the right side of the bed, looking from the footboard, the side nearest to the bedroom window. (*Id*.). S.D. testified that Jordan is "sort of a neat freak" and keeps his bedroom very neat, and Jordan has a standard size bed. (*Id*. at 203). According to S.D., Jordan sleeps with the window blind up at night because he likes light in his bedroom. (*Id*. at 204). S.D. testified that her daughter's house is very bright at night. (*Id*. at 205).

{¶10} S.D. testified that, when she fell asleep, she was wearing a pair of pink flannel pajamas (State's Ex. 3) with nothing else underneath. (*Id*. at 205, 210). S.D. testified that the pajamas are "large * * * [t]hey don't bind you around the body. You're able to sleep in comfort." (*Id*. at 206). She further testified that the pajamas were "very loose" because she does not "like anything tight around [her] waist or [her] body while [she] sleep[s]." (*Id*. at 207). S.D. testified that she awoke that night to her own screaming, and she saw Wine very close to her face,

kneeling down on the right side of the bed. (*Id.* at 210-211). She testified that she saw Wine clearly since she had fallen asleep with her glasses on, and Jordan's bedroom was very bright. (*Id.*). S.D. testified that she then realized that Wine's finger was in her vagina, and his right hand was under her pajamas on her chest. (*Id.* at 211). S.D. testified that the palm of Wine's right hand was in the center of her breast bone, and his fingers were toward her right breast. (*Id.* at 212). She testified that she woke up because she could feel Wine's finger inside her vagina. (*Id.* at 213). However, when asked if Wine may have had difficulty inserting his finger into her vagina, S.D. testified, "[m]y vagina is very dry and so there was difficulty and I believe the pain is really what made me aware of the fact of what he was doing." (*Id.*). S.D. further testified:

> When I yelled he took his finger out of my vagina and took his hand out from underneath my pajama top but he kept his hands under the blankets and he just kept staring at me. And I thought, "I'm not going to get out of this. I'm not going to get out of this." And then he said, "Who is in bed with you?" And I said, "Jordan." And I said Jordan as loud as I could say Jordan and he took his hands out from underneath the blankets and he stood up, walked over and unlocked the bedroom, just unlatched the bedroom door and walked out and

closed the bedroom door. We did not close bedroom doors. Jordan and I did not close that bedroom door. (*Id*. at 214).

S.D. testified that Jordan did not wake up even after she said his name as loudly as she could, because Jordan is a "very heavy sleeper." (*Id*. at 215). S.D. further testified that, after Wine left the room, she was "stupefied" and "dumbfounded"; she put on her slippers and went to Cecil's bedroom for the rest of the night, though she could not fall back asleep. (*Id*.). She testified that, as she walked toward the bedroom door to leave, she thought "[i]f [Wine] is behind that door, I'm in trouble," but Wine was not there. (*Id*.). S.D. did not tell Cecil what happened that night, and Cecil did not hear her yell since he turns off his hearing aids at night. (*Id*. at 216). S.D. returned to Cecil's bedroom around 12:15 a.m., but could not fall back asleep. (*Id*. at 217-218).

{¶11} On cross-examination, S.D. testified that she probably also had a house coat over her pajamas the night of the incident. (*Id*. at 235). S.D. further testified that she wears an insulin pump at all times, which is attached to the left side of her pants on the waistband. (*Id*. at 235-237). According to S.D., fine rubber tubing, called cannula, connects the insulin pump to her stomach just below her navel. (*Id*. at 237-238). S.D. testified that she believed Wine was still downstairs when Cecil and she went to their bedroom. (*Id*. at 239). S.D. testified that she was under the covers in Jordan's bed with her pajamas on, but she did not

have her housecoat on in the bed. (*Id*. at 240). S.D. testified that she was sleeping on her back with her legs together and Jordan was next to her, but she was not touching Jordan. (*Id*. at 243-245). S.D. testified that, when she awoke, Wine's hands were already under her pajamas and his finger inside her vagina. (*Id*. at 244). She testified that the covers were not pushed back. (*Id*.). S.D. testified that she yelled loud enough that she hoped that Clarinda would hear, but Jordan did not hear her. (*Id*. at 246-247, 249). When she said "Jordan" was in the bed with her, Wine removed his hands from underneath the covers, according to S.D. (*Id*. at 247). When asked if she feared for her life, S.D. testified, "[w]hen he kept looking at me and he still had his hands under the blankets, I just got this thought in my mind, 'I'm not going to get out of this.'" (*Id*. at 248). S.D. testified that, "for that split second" she feared Wine would put his knee into her stomach and put his hand over her face. (*Id*. at 248). She further testified that, if Wine had been standing outside the bedroom door, "I probably wouldn't have gotten to the bedroom, when I opened that door." (*Id*.). On redirect, S.D. testified that, she was not sure how Wine was going to handle the fact that she recognized him when he was touching her. (*Id*. at 280).

{¶12} At the close of the evidence, the trial court instructed the jury on rape, the only count in the indictment, as well as the lesser-included offenses of sexual battery in violation of R.C. 2907.03(A)(1), a third degree felony, and gross

sexual imposition in violation of R.C. 2907.05(A)(1), a fourth degree felony. (*Id.* at 583-596). The jury found Wine guilty of gross sexual imposition. (Doc. No. 128).

{¶13} On December 14, 2011, the trial court sentenced Wine to 15 months imprisonment and classified him as a Tier I sexual offender. (Doc. No. 142).

{¶14} On January 9, 2012, Wine filed a notice of appeal. (Doc. No. 159). Wine now appeals raising eight assignments of error for our review. We elect to address Wine's assignments of error out of the order presented in his brief and to combine his assignments of error together where appropriate for discussion.

**Assignment of Error No. II**

**The appellant was denied due process and a fair trial when the trial court ordered lesser included offenses as part of the jury instructions over the defendant's objections.**

{¶15} In his second assignment of error, Wine argues that the trial court erred by instructing the jury on lesser-included offenses of sexual battery and gross sexual imposition.

{¶16} A jury instruction on a lesser-included offense is only required if "the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser included offense." *State v. Douglas*, 3d Dist. No. 9-05-24, 2005-Ohio-6304, ¶ 20, citing *State v. Thomas*, 40 Ohio St.3d 213, 216 (1988). The trial court's decision whether to instruct the jury on a lesser

included offense will not be reversed absent an abuse of its discretion. *Id*., citing *State v. Mitchell*, 53 Ohio App.3d 117, 119-120 (8th Dist.1988). An abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶17} Initially, we note that Wine does not dispute that sexual battery and gross sexual imposition are lesser included offenses of rape. Wine argues that the lesser-included offense instruction for sexual battery in violation of R.C. 2907.03(A)(1) was erroneous because there was no evidence of "coercion." We decline to address this argument. Since the jury did not convict Wine of sexual battery, our discussion of the propriety of the jury instruction would be merely advisory and not outcome-determinative. Aside from that, Wine failed to raise this argument with the trial court waiving all but plain error, and we are not persuaded that the outcome of the trial court would have been different but for the trial court's instruction on sexual battery. (Oct. 25-28, 2011 Tr. at 549-550); *State v. Turks*, 3d Dist. Nos. 1-10-02, 1-10-26, 2010-Ohio-5944, ¶ 17; *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996), citing *State v. Moreland*, 50 Ohio St.3d 58 (1990).

{¶18} With respect to the jury instruction for gross sexual imposition, Wine argues that the victim's testimony clearly indicated penetration, so the jury could not have found merely sexual contact. We disagree. When asked if Wine may

have had difficulty putting his finger into her vagina, the victim testified, "[m]y vagina is very dry and so there was difficulty and I believe the pain is really what made me aware of the fact of what he was doing." (Oct. 25-28, 2011 Tr. at 213). From this testimony, a rational juror could have concluded that penetration, required for a rape conviction, did not occur but "sexual contact" did occur sufficient for a gross sexual imposition conviction. Therefore, the trial court did not abuse its discretion by instructing the jury on gross sexual imposition.

{¶19} Finally, Wine argues that he was entitled to waive the jury instructions on a lesser-included offense as a matter of trial strategy. This argument lacks merit. Wine cites to cases where the appellate court found that trial counsel was not ineffective for failing to request a lesser-included instruction but instead sought a complete acquittal as a matter of trial strategy. *See e.g. State v. Stacey*, 3d Dist. No. 13-08-44, 2009-Ohio-3816, ¶ 21; *State v. Murphy*, 9th Dist. No. 24753, 2010-Ohio-1038, ¶ 8-9. That trial counsel may decide not to request lesser-included instructions as a matter of trial strategy does not mean the trial court lacks discretion to instruct the jury where the evidence, in fact, merits such an instruction. These cases do not stand for the proposition of law Wine asserts.

{¶20} Wine's second assignment of error is, therefore, overruled.

**Assignment of Error No. III**

**The appellant was denied due process and a fair trial when the trial court allowed into evidence an edited videotape of the appellant's pre and post-polygraph interrogations in violation of the standards of State v. Souel and over the defendant's objections.**

**Assignment of Error No. IV**

**The appellant was denied due process and a fair trial when the trial court allowed into evidence an edited videotape of the appellant's pre and post-polygraph interrogations in violation of Evidence Rules 401, 402 and 403 and over the defendant's objection.**

**Assignment of Error No. V**

**The appellant was denied due process and a fair trial when the trial court allowed the edited videotape from the appellant's polygraph examination and the edited videotaped interview with Detective Sawmiller to be sent back to the jury room during deliberations over the objections of the defendant**.

{¶21} In his third assignment of error, Wine argues that the trial court erred by admitting an edited video of his pre and post-polygraph interview under *State v. Souel*, 53 Ohio St.2d 123 (1978). In his fourth assignment of error, Wine argues that the trial court erred by admitting the edited video of his pre and post-polygraph interview under Evid.R. 401, 402, and 403. In his fifth assignment of error, Wine argues that the trial court erred by allowing the jury to review the edited video of his pre and post-polygraph interview and his police interview during deliberations.

{¶22} The admissibility of relevant evidence rests within the sound discretion of the trial court. *City of Columbus v. Taylor*, 39 Ohio St.3d 162, 164 (1988), citing *Calderon v. Sharkey*, 70 Ohio St.2d 218 (1982). Absent an abuse of discretion, as well as a showing that the appellant suffered material prejudice, an appellate court will not disturb a trial court's ruling as to the admissibility of evidence. *State v. Martin*, 19 Ohio St.3d 122, 129 (1985). An abuse of discretion connotes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Adams*, 62 Ohio St.2d at 157.

{¶23} In *State v. Souel*, the Ohio Supreme Court held that "the results" of polygraph examinations were admissible in evidence at criminal trials for purposes of corroboration or impeachment *only if* there is a written stipulation by the parties, the opposing parting has the right to cross-examine the polygraph examiner, and the trial court provides the jury with an appropriate limiting instruction. 53 Ohio St.2d 123 (1978), paragraphs one, three, and four of the syllabus. Wine concedes that *Souel* did not specifically address pre and post-polygraph interviews; nevertheless, Wine argues that the Court's decision in *Souel* should be expanded to cover such interviews since they are "part and parcel" of the polygraph examination. In support of his argument, Wine relies upon *State v. Gordon*, where the Court of Appeals determined that the trial court erred by

-13-

admitting the defendant's post-polygraph confession. 11th Dist. No. 1410 (Mar. 31, 1989).

{¶24} This case is factually distinguishable from *Gordon*. To begin with, the polygraph interview in *Gordon* was conducted by law enforcement, not a private party prior and unrelated to the subsequent criminal proceedings like here. 11th Dist. No. 1410, at *3; *See State v. Kerby*, 162 Ohio App.3d 353, 2005-Ohio-3734, ¶ 108 (2nd Dist.) (*Miranda* warnings are not required when the suspect is interrogated by a private citizen), citing *Illinois v. Perkins*, 496 U.S. 292, 110 S.Ct. 2394 (1990). More significantly, the Court in *Gordon* determined that the defendant's post-polygraph interview confession should not have been admitted because the polygraph examination, itself, was tainted due to "the prosecutor's urgings, the inaccurate explanation of the right to counsel, and the invalid stipulations." 11th Dist. No. 1410, at *8. Since the polygraph examination was tainted, the Court in *Gordon* concluded that "[a]ny subsequent evidence obtained from that tainted examination should be likewise suppressed. The state should not be able to cleanse itself from such improprieties by obtaining a 'Mirandized confession' in this manner." *Id*. at *8. The polygraph examination here does not suffer from the same fatal defects as the polygraph examination in *Gordon*, and therefore, *Gordon* does not control. Accordingly, we are also not persuaded to

expand the Court's decision in *Souel* to include the contents of pre and post-polygraph interviews as Wine urges on appeal.

**{¶25}** In his fourth assignment of error, Wine argues that the trial court erred by admitting the videotaped pre and post-polygraph interviews since its probative value was outweighed by its danger of prejudice. Specifically, Wine argues that his "admission" was coerced since it occurred "in the face of an irate, screaming, out-of-control wife threatening to end their relationship if he did not 'admit' and 'take ownership' of the accusations." (Appellant's Brief at 18).

**{¶26}** During the post-polygraph interview, Wine's wife asked him to "tell [her] about [her] mom" to "be as honest as [he] could be" and "to open [his] mouth and talk to [her]." (State's Ex. 5). Wine stated that "it had to happen," at which point, Wine's wife stated that he should take ownership of his actions by stating, "It happened! I did it! Your mom is not a liar!" In response, Wine stated "your mom's not a liar." (*Id.*). Although Wine's admission occurred due to his wife's influence, we cannot conclude that the trial abused its discretion by admitting the evidence. To begin with, contrary to Wine's assertions on appeal, Wine's wife did not threaten to leave him unless he admitted to sexually assaulting her mother; in fact, she stated she "was willing to help [him]," "was willing to lay [her] reputation," and she "could care less of what people think of [her]." (State's Ex. 5). Wine argues that his admission was unreliable since it was "coerced." The

case law concerning coerced confession all involve law enforcement officers, not private parties. *See e.g. State v. Jenkins*, 192 Ohio App.3d 276, 2011-Ohio-754 (2nd Dist.). "The most outrageous behavior by a private party seeking to secure evidence against a defendant does not make that evidence inadmissible under the Due Process Clause." *Colorado v. Connelly*, 479 U.S. 157, 166, 107 S.Ct. 515 (1986). Therefore, the trial court did not abuse its discretion by allowing Wine's admission into evidence.

{¶27} In his fifth assignment of error, Wine argues that the trial court erred by allowing the jury to review the videos of his pre and post-polygraph and police interview during deliberations. Specifically, Wine argues that the jury could have viewed the videos multiple times, which was highly prejudicial to him. "Ohio courts follow the majority rule, which permits the replaying of video or audio exhibits during jury deliberations." *State v. Tyler*, 196 Ohio App.3d 443, 2011-Ohio-3937, ¶ 40 (4th Dist.), citing *State v. McGuire*, 80 Ohio St.3d 390, 396, (1997); *State v. Loza*, 71 Ohio St.3d 61, 79-80 (1994) (per curiam); *State v. Clark*, 38 Ohio St.3d 252, 257 (1988) (per curiam). Furthermore, "'sending properly admitted evidence into jury deliberations rests within the sound discretion of the trial judge.'" *Tyler*, 2011-Ohio-3937, at ¶ 40, quoting *McGuire*, 80 Ohio St.3d at 396. *McGuire*, *Loza*, and *Clark* impose no limitation upon the number of times a jury may watch video evidence. *Id*. Besides that, there is nothing in the record

indicating how many times the jury actually viewed the videos in this case. Consequently, we cannot conclude that the trial court abused its discretion by allowing the jury to review the videos in this case.

{¶28} Wine's third, fourth, and fifth assignments of error are, therefore, overruled.

## Assignment of Error No. VI

**The appellant was denied due process and a fair trial when the prosecutor engaged in misconduct during his closing statement at trial, which conduct substantially prejudiced the appellant and misled the jury.**

{¶29} In his sixth assignment of error, Wine argues that he was denied a fair trial when the prosecutor engaged in misconduct misleading the jury. Specifically, Wine argues that the prosecutor commented on his lack of denials and expressed his opinion concerning the complaining witness' truthfulness.

{¶30} As an initial matter, we note that Wine failed to object to the prosecutor's statements during closing argument, and therefore, waived all but plain error on appeal. *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 230, citing *State v. Childs*, 14 Ohio St.2d 56 (1968), paragraph three of the syllabus.

{¶31} The test regarding prosecutorial misconduct during closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected the defendant's substantial rights. *Davis*, 2008-Ohio-2, at ¶

231, citing *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). "In making this determination, an appellate court should consider several factors: (1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant." *State v. Braxton*, 102 Ohio App.3d 28, 41 (8th Dist.1995).

{¶32} "Misconduct of a prosecutor at trial will not be considered grounds for reversal unless the conduct deprives the defendant of a fair trial." *Id.*, citing *State v. Apanovitch*, 33 Ohio St.3d 19 (1987); *State v. Maurer*, 15 Ohio St.3d 239 (1984). The touchstone of the analysis is "the fairness of the trial, not the culpability of the prosecutor." *Davis*, 2008-Ohio-2, at ¶ 231, citing *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940 (1982).

{¶33} Wine argues that the prosecutor inappropriately commented on his decision not to categorically deny the victim's allegations. During closing argument the prosecutor replayed a portion of Wine's pre and post-polygraph interview (State's Ex. 5) for the jury. (Oct. 25-28, 2011 Tr. at 582). Just prior to replaying the video, the prosecutor stated:

> Lastly, Ladies and Gentlemen, if you were accused of this and if you did not do it, would you say, "I can't remember. I don't remember. It could've happened. I think something happened. Yeah, probably something did happen. Your mom is not a liar. Your mom is not a

liar." If you were accused of those things, what would you say? What would you scream from the mountaintop as loudly as you could? "I did not do this." Not, "I don't know. I can't remember." You'd scream it from the mountaintop that "I did not do this." (*Id.*).

Reading the prosecutor's remarks in the context of Wine's statements during his pre and post-polygraph interview, admitted into evidence, it is clear the prosecutor was not remarking upon Wine's "right to remain silent" but upon Wine's changing story and his tacit admission that something happened. Beyond that, we cannot conclude that these statements deprived Wine of a fair trial or rise to the level of plain error in this case.

{¶34} Wine also argues that the prosecutor improperly vouched for the victim. "An attorney may not express a personal belief or opinion as to the credibility of a witness." *Davis* at ¶ 232, citing *State v. Williams*, 79 Ohio St.3d 1, 12 (1997). "Vouching occurs when the prosecutor implies knowledge of facts outside the record or places his or her personal credibility in issue." *Id.*, citing *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 117. During closing argument, the prosecutor stated "[t]here is no reason to doubt what [the victim] says about who she saw and what was happening to her." (Oct. 25-28, 2011 Tr. at 563). However, this remark is immediately preceded by the prosecutor's statements regarding the victim's testimony that the bedroom where the sexual

assault occurred was brightly illuminated at night because of an outdoor light. (*Id.*); (*Id.* at 204-205). When the prosecutor asked the victim whether she had any difficulty recognizing Wine the night of the incident, the victim testified, "[n]o, none whatsoever. The room was as bright as if somebody had turned the light on." (*Id.* at 211). Therefore, reading the prosecutor's remarks in context and in light of the relevant evidence, it is clear that the prosecutor was merely referring to the victim's testimony concerning why she was so certain it was the defendant who sexually assaulted her. This is not vouching.

{¶35} The prosecutor also stated during closing argument: "[w]hat motive does [the victim] have to lie?"; "[The victim] is not a liar"; and, "[The victim] is not a liar and these events occurred the way she described." (*Id.* at 582-583). Once again, Wine divorces these remarks from their context to support his vouching argument. The context of these remarks is clearly referring to Wine's statements during his post-polygraph interview, and specifically Wine's statement that the victim is not a liar. (State's Ex. 5). The post-polygraph interview was admitted into evidence at trial; and therefore, the prosecutor's remarks, viewed in context and in light of the evidence, do not amount to impermissible vouching.

{¶36} Wine's sixth assignment of error is, therefore, overruled.

**Assignment of Error No. I**

**The appellant was denied due process and a fair trial when the trial court did not order an acquittal of all charges at the close of the state's case as the evidence was insufficient to sustain a conviction.**

{¶37} In his first assignment of error, Wine argues that the State failed to produce sufficient evidence to sustain his gross sexual imposition conviction. Specifically, Wine argues that the State failed to demonstrate the element of "force" when the victim was sleeping during the sexual contact.

{¶38} When reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus.

{¶39} The criminal offense of gross sexual imposition is codified in R.C. 2907.05, which provides, in relevant part: "[n]o person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he offender purposely compels the other person * * * to submit by force or threat of force." R.C. 2907.05(A)(1).

{¶40} R.C. 2907.05(A)(1)'s plain language requires a causal connection between the victim's submission and the element of force since the victim submits "*by* force or threat of force." (Emphasis added). As used in R.C. 2907.05(A)(1),

"by" is most appropriately defined as: "through the agency or instrumentality of." *Merriam-Webster's Collegiate Dictionary* 170 (11th Ed.2009); *Webster's Third New International Dictionary* 306-307 (2002). Accordingly, the key inquiry for determining whether the State presented sufficient evidence on the element of force is whether the "victim's will was overcome by fear or duress." *In re Forbess*, 3d Dist. No. 2-09-20, 2010-Ohio-2826, ¶ 40, citing *State v. Heft*, 3d Dist. No. 8-09-08, 2009-Ohio-5908, ¶ 88, citing *State v. Eskridge*, 38 Ohio St.3d 56, 58-59 (1988). While this inquiry is taken from *State v. Eskridge* where the victim was a young child, this inquiry is not limited to such cases since *Eskridge* cited to *State v. Martin*, 77 Ohio App. 553 (9th Dist.1946), where the victim was an adult, and stated this standard as a general rule of law. *State v. Rupp*, 7th Dist. No. 05 MA 166, 2007-Ohio-1561, ¶ 25-28.

{¶41} A victim is not required to prove physical resistance for the offender to be guilty of gross sexual imposition. R.C. 2907.05(D). "Force" is generally defined by statute as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2929.01(A)(1). Nevertheless, Ohio Supreme Court case law demonstrates that the type and amount of force necessary to purposefully compel a victim to submit "by force or threat of force" depends upon the victim and offender's relationship. R.C.

2929.01(A)(1). *State v. Pordash*, 9th Dist. No. 04CA008480, 2004-Ohio-6081, ¶ 12.

**{¶42}** In 1921, the Ohio Supreme Court in *State v. Labus* interpreted the element of force in the rape statute when the victim was the offender's daughter, who was under the age of twelve. 102 Ohio St. 26, 38-39. Section 12413 of the General Code then provided that "[w]hoever has carnal knowledge of his daughter, sister, or a female person under twelve years of age, *forcibly and against her will*, shall be imprisoned in the penitentiary during life * * *." *Id*. at 27 (emphasis added). The Court in *Labus* recognized that "[t]he force and violence necessary in rape is naturally a relative term, depending upon the age, size and strength of the parties and their relation to each other * * *." *Id*. at 39. The Court reasoned that:

> [w]ith the filial obligation of obedience to the parent, the same degree of force and violence would not be required upon a person of such tender years as would be required were the parties more nearly equal in age, size, and strength. *Id*.

In light of the "threats, fright, intimidation and the like, coupled with the unnatural and atrocious act," the Court in *Labus* ultimately concluded that the State overwhelmingly proved force and sustained the rape conviction. *Id*.

**{¶43}** In 1988, the Court in *Eskridge* interpreted the element of force in the rape statute where the victim was the offender's four-year-old daughter. 38 Ohio St.3d 56. At that time, R.C. 2907.02(B) provided: "[i]f the offender * * * purposely compels the victim *to submit by force or threat of force*, whoever violates division (A)(3) of this section shall be imprisoned for life." *Id*. at 57 (emphasis added). Relying upon its earlier decision in *Labus*, the Court in *Eskridge* observed "the coercion inherent in parental authority when a father sexually abuses his child" and found that "[f]orce need not be overt and physically brutal, but can be subtle and psychological." *Id*. at 58. According to the Court,

> [t]he youth and vulnerability of children, coupled with the power
>
> inherent in a parent's position of authority, creates a unique situation
>
> of dominance and control in which explicit threats and displays of
>
> force are not necessary to effect the abuser's purpose. *Id*. at 59,
>
> citing *State v. Etheridge*, 319 N.C. 34, 47 (1987).

The Court thereafter stated that the forcible element of rape can be established "[a]s long as it can be shown that the rape victim's will was overcome by fear or duress." *Id*., citing *Martin*, 77 Ohio App. 553 and *State v. Wolfenberger*, 106 Ohio App. 322 (2nd Dist.1958). The Court concluded that the State presented sufficient evidence of force given the size and age disparities of the offender and

the victim, the inherent coercion of the offender's parental authority, and the victim's repulsion to the acts themselves. *Id*. at 58-59.

{¶44} In 1992, the Court in *State v. Schaim* again interpreted the element of force for purposes of rape in violation of R.C. 2907.02(A)(2) where the victim was the offender's twenty-year-old daughter. 65 Ohio St.3d 51, 52. R.C. 2907.02(A)(2) prohibited sexual conduct where the offender "purposely compels the other person to submit by force or threat of force." *Id*. at 54. The evidence presented demonstrated that the father began sexually abusing his daughter when she was ten or eleven years old and continued to sexually abuse her into her twenties. *Id*. at 52. The father was convicted of two counts of forcible rape for twice having vaginal sex with his daughter when she was twenty years old. *Id*. The Court of Appeals reversed the rape convictions finding that the State failed to produce sufficient evidence on the element of force. *Id*. at 53.

{¶45} On appeal to the Ohio Supreme Court, the State, relying upon *Eskridge*, argued that the father's pattern of sexually abusing his daughter was sufficient to demonstrate force. *Id*. at 54. The Ohio Supreme Court disagreed that *Eskridge* applied, because *Eskridge* was "based solely on the recognition of the amount of control that parents have over their children, particularly young children." *Id*. at 55. According to the Court,

a woman over the age of majority is not compelled to submit to her father in the same manner as is a four-year-old girl. She is no longer completely dependent on her parents, and is more nearly their equal in size, strength, and mental resources. *Id.*

Thereafter, the Court concluded that the element of force can be established "if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit." *Id.* Since the State failed to produce such evidence—or even evidence that the offender used or threatened to use physical force during the uncharged sexual offenses from which an inference of force or threat of force for the charged offenses could arise—the Court determined that the record contained insufficient evidence of force to sustain the rape conviction. *Id.*

{¶46} In 1988, the Court in *State v. Dye* again interpreted the element of force in the rape statute, where the victim was the nine-year-old son of the offender's female friend. 82 Ohio St.3d 323. The Court determined that *Eskridge* applied even though the defendant was not the victim's father, because *Eskridge* did not strictly depend upon the parental relationship between the offender and the victim, but the offender's position of authority over the victim. *Id.* at 328. Therefore, the Court in *Dye* held that "a person in a position of authority over a child under thirteen may be convicted of rape of that child with force pursuant to

R.C. 2907.02(A)(1)(b) and (B) without evidence of express threat of harm or evidence of significant physical restraint." *Id.* at 329. Consequently, the Court determined that the State presented sufficient evidence of force given the age and size disparity between the victim and the offender, the psychological force, and the offender's position of authority over the child-victim. *Id.* at 328-329.

{¶47} After reviewing the case law, we conclude that "subtle and psychological" force found sufficient in *Eskridge* and *Dye* are insufficient here, because S.D. was an adult and Wine was not in a position of authority over S.D. *Schaim*, 65 Ohio St.3d at 54-55. Rather, the State was required to prove beyond a reasonable doubt that Wine "use[ed] physical force against [S.D.], or create[d] the belief that physical force [would] be used if [S.D.] [did] not submit" to establish the element of force. *Id.* at 55. The evidence presented at trial demonstrated that S.D. was sleeping and unaware of the sexual contact, and, as soon as she awoke, Wine withdrew his hands from her body, ending the sexual contact. Significantly, no sexual contact occurred after S.D. was awake and aware of the sexual contact. S.D.'s will was not overcome by force or threat of force, nor did S.D. "submit" to the sexual contact by force or threat of force. *Eskridge*, 38 Ohio St.3d at 58-59. The State also failed to produce sufficient evidence that Wine created the belief that physical force would be used if S.D. did not submit to the sexual contact. *Schaim*, 65 Ohio St.3d at 55. While it is true that S.D. was in a state of fear and

duress after she awoke and realized Wine had sexually contacted her, S.D.'s fear and duress did not *cause* her to submit to the initial sexual contact or any further contact. Aside from that, S.D. did not fear that Wine would continue the sexual contact but that Wine would kill her to conceal his already completed sexual contact. For these reasons, we conclude that the evidence is insufficient to establish that Wine purposely compelled S.D. to submit to the sexual contact by (through the agency or instrumentality of) force or threat of force.

{¶48} We recognize that the Court of Appeals for the Eighth District has concluded that any manipulation of a sleeping victim's body or clothing is sufficient force for purposes of rape in violation of R.C. 2907.02(A)(2), but we are not persuaded to follow that line of cases. *State v. Clark*, 8th Dist. No. 90148, 2008-Ohio-3358; *State v. Graves*, 8th Dist. No. 88845, 2007-Ohio-5430; *State v. Simpson*, 8th No. 88301, 2007-Ohio-4301; *State v. Lilliard*, 8th Dist. No. 69242 (May 23, 1996); *State v. Sullivan*, 8th Dist. No. 63818 (Oct. 7, 1993). Before its decision in *Graves*, the Eighth District applied this reduced level of force in cases involving sleeping *children*, subject to the reduced levels of force articulated in *Eskridge* and *Dye*. *Sullivan*, *Lilliard*, and *Simpson*. However, the Eighth District in *Graves* found that the defendant used sufficient force when he pulled down the pants and separated the legs of the 28-year-old sleeping victim. 2007-Ohio-5430, at ¶ 17. The Eighth District cited *Eskridge*, *Simpson*, and *Sullivan* to find

sufficient force under the statute without any discussion about the fact that the victim in *Graves* was an adult. *Id.* Likewise, the Court in *Clark* found that the defendant used sufficient force when he moved a 19-year-old's pajamas and underwear in order to insert his finger into her vagina while she was sleeping. 2008-Ohio-3358, at ¶ 6, 17. Relying upon *Graves*, *Simpson*, *Lilliard*, and *Sullivan*, the Eight District in *Clark* found that "the manipulation of a sleeping victim's clothing in order to facilitate sexual conduct constitutes force," and "where the victim is sleeping and thus not aware of the defendant's intentions, only minimal force is necessary to facilitate the act." *Id.* at ¶ 17.

{¶49} We decline to adopt the Eighth District's reduced level of force for sleeping victims for several reasons. To begin with, the reasoning in the Eighth District's line of cases stems from *Eskridge* where the victim was the offender's four-year-old daughter. The Ohio Supreme Court has limited the application of *Eskridge*'s reduced levels of force to situations where the offender is the victim's parent or holds a similar position of authority over a child-victim. *Schaim*, 65 Ohio St.3d at 55; *Dye*, 82 Ohio St.3d at 329. Other districts that have applied a reduced level of force for sleeping victims have done so only in cases involving child-victims. *State v. Johnson*, 2nd Dist. No. 2009-CA-38, 2010-Ohio-2920, ¶ 18 (16 year-old); *State v. Burton*, 4th Dist. No. 05CA3, 2007-Ohio-1660, ¶ 38 (10-13 years old); *State v. Green*, 5th Dist. No. 01CA-A-12-067, 2002-Ohio-3949, ¶ 61

(16 year-old); *State v. H.H.*, 10th Dist. No. 10AP-1126, 2011-Ohio-6660, ¶ 12 (17 year-old); *State v. Rutan*, 10th Dist. No. 97APA03-389 (Dec. 16, 1997), *11 (14-15 year-olds). The Eighth District's focus upon "force necessary to facilitate the act" also ignores the fact that "the statute requires that some amount of force must be proven beyond that force inherent in the crime itself." *Clark*, 2008-Ohio-3358, at ¶ 17; *Dye*, 82 Ohio St.3d at 327. The statute requires that the victim submit to the sexual contact *by* force or threat of force. R.C. 2907.05(A)(1). This requires more than "force necessary to facilitate the act" but force or threat of force sufficient to overcome the will of the victim. *Eskridge*, 38 Ohio St.3d at 58-59.

**{¶50}** Since the Eighth District's interpretation of the element of force in sleeping-victim cases "fails to recognize the requirement that the force or threat of force must be sufficient to overcome the will of the victim," it blurs the distinction between sex offenses requiring force and sex offenses not requiring force. *State v. Henry*, 3d Dist. No. 13-08-10, 2009-Ohio-3535, ¶ 32. The General Assembly has provided specific criminal offenses to protect victims, like S.D., "whose ability to resist * * * is substantially impaired because of a * * * physical condition" or who submit because they are "unaware that the act is being committed." See R.C. 2907.02(A)(1)(c); 2907.05(A)(5); 2907.03(A)(3). The Court of Appeals has concluded that sleeping is a 'physical condition' that substantially impairs a victim's ability to resist for purposes of rape in violation of R.C. 2907.02(A)(1)(c).

*Graves*, 2007-Ohio-5430, at ¶ 22, citing *State v. Younger*, 8th Dist. No. 86235, 2006-Ohio-296; *State v. Wright*, 9th Dist. No. 03CA0057-M, 2004-Ohio-603, ¶ 6; *H.H.*, 2011-Ohio-6660, at ¶ 10. For the same reason, an offender may also be convicted of committing gross sexual imposition against a sleeping victim under R.C. 2907.05(A)(5). *See id.* Similarly, an offender may be convicted of committing sexual battery or sexual imposition against a sleeping victim under R.C. 2907.03(A)(2), (3) or R.C. 2907.06(A)(3). *Henry*, 2009-Ohio-3535, at ¶ 33, citing *State v. Lindsay*, 3d Dist. No. 8-06-24, 2007-Ohio-4490; *State v. Antoline*, 9th Dist. No. 02CA008100, 2003-Ohio-1130; *Wright*, 2004-Ohio-603; *State v. Byrd*, 8th Dist. No. 82145, 2003-Ohio-3958, ¶ 23. By diminishing R.C. 2907.05(A)(1)'s element of force to mere manipulation of a sleeping victim's body or clothing, the Eighth District usurps the General Assembly's power to define and codify criminal offenses and to treat offenders differently depending upon the nature of their conduct.

{¶51} As a final matter, we note that our decision here is not governed by *State v. Euton* and *Henry* wherein divided panels of this Court reversed gross sexual imposition convictions for insufficient evidence of force or threat of force. 3d Dist. No. 2-06-35, 2007-Ohio-6704; 2009-Ohio-3535. The victim in *Euton* was a 14-year-old boy who was awake during a portion of the sexual contact. Likewise, the record in *Henry* demonstrated that the victim, a girl attending

college, was awakened during the night by the defendant's hand near her pubic area and told the defendant, who she thought was her boyfriend, "no" five times before she was finally able to push the defendant out of her bed. In both cases, the victim was awake and consciously aware of the sexual contact. Unlike the victims in *Euton* and *Henry*, S.D. was asleep during the entire time the sexual contact occurred—S.D.'s fear and duress occurred after the sexual contact occurred when she realized what Wine had done.

{¶52} While we abhor the defendant's conduct, our review of the applicable law concerning the element of force leads us to conclude that the State presented insufficient evidence that Wine compelled S.D. to submit to the sexual contact by force or threat of force. Nevertheless, the evidence presented *was* sufficient to prove beyond a reasonable doubt that Wine committed the lesser-included offense of sexual imposition in violation of R.C. 2907.06(A)(1). *State v. Staab*, 9th Dist. no. 04CA008612, 2005-Ohio-3323, ¶ 7 (sexual imposition under R.C. 2907.06(A)(1) is lesser included offense of gross sexual imposition under R.C. 2907.05(A)(1)); *State v. Cechura*, 7th Dist. No. 99 CO 74 (May 8, 2001), at * 3-4 (same). "[A]n appellate court '[can] modify a verdict where the evidence shows that the appellant was not guilty of the crime for which he was convicted, but is guilty of a lesser included offense* * *.'" *State v. Cobb*, 153 Ohio App.3d 541, 2003-Ohio-3821, ¶ 7 (1st Dist.), quoting *State v. Vanhorn*, 8th Dist. No.

44655 (Mar. 31, 1983); App.R. 12(B). The evidence demonstrated beyond a reasonable doubt that Wine had sexual contact with S.D., who was not his spouse, and Wine knew that the sexual contact was offensive to S.D. or was, at least, reckless in that regard. R.C. 2907.06(A)(1). Therefore, we vacate Wine's conviction for gross sexual imposition in violation of R.C. 2907.05(A)(1) and remand this case for the trial court to enter a finding of guilt for the lesser-included offense of sexual imposition in violation of R.C. 2907.06(A)(1) and to sentence Wine for that offense.

{¶53} Wine's first assignment of error is, therefore, sustained to the extent expressly stated herein.

## Assignment of Error No. VII

**The appellant was denied his constitutional right to effective assistance of counsel when the appellant's trial counsel failed to protect appellant's rights at trial.**

{¶54} In his seventh assignment of error, Wine argues that he was denied effective assistance of counsel when counsel elicited testimony from the victim on the element of force. He further argues that trial counsel was ineffective for failing to prepare for trial on lesser-included offenses, failing to argue a lack of force for purposes of the Crim.R. 29 motion, failing to object to the prosecutor's inappropriate remarks during closing argument, and failing to utilize a polygraph expert.

{¶55} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984).

{¶56} In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland*, 466 U.S. at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St. 3d 136, 141-142 (1989), citing *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976)

{¶57} Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bradley*, 42 Ohio St. at 142, citing *Strickland*, 466 U.S. at 691. "A

reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bradley*, 42 Ohio St.3d at 142; *Strickland*, 466 U.S. at 694.

{¶58} Since we have already determined that the State presented insufficient evidence that Wine purposely compelled the victim to submit to the sexual contact by force or threat of force and that the prosecutor's remarks were permissible, we cannot conclude that Wine was denied effective assistance of counsel on these grounds. Furthermore, the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel. *State v. Nicholas*, 66 Ohio St.3d 431, 436 (1993). Counsel's decision to forgo lesser-included offenses is also a matter of trial strategy and, therefore, not ineffective assistance of counsel. *See State v. Clayton*, 62 Ohio St.2d 45 (1980); *Carter*, 72 Ohio St.3d at 558.

{¶59} Wine's seventh assignment of error is, therefore, overruled.

### Assignment of Error No. VIII

**The appellant was denied due process and a fair trial as the errors committed by the trial court, the prosecutor, and the appellant's trial counsel combined to deny the appellant of a fair trial.**

{¶60} In his eighth assignment of error, Wine argues that the combined effect of all the errors in this case denied him a right to a fair trial.

{¶61} Although we found prejudicial error to Wine in his first assignment of error, we cannot find *cumulative* error in this case since we failed to find any error in his remaining assignments of error. *State v. Garner*, 74 Ohio St.3d 49, 64 (1995).

{¶62} Wine's eighth assignment of error is, therefore, overruled.

{¶63} Since the State failed to present evidence of force or threat of force sufficient to overcome the will of the victim, we vacate Wine's conviction for gross sexual imposition in violation of R.C. 2907.05(A)(1). Nevertheless, since the State presented sufficient evidence on the lesser-included offense of sexual imposition in violation of R.C. 2907.06(A)(1), we remand this case for the trial court to enter a finding of guilt and to sentence Wine for that offense.

*Judgment Vacated and*
*Cause Remanded*

**SHAW, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**