[Cite as *State v. Aramouni*, 2020-Ohio-2918.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

ANTOINE ARAMOUNI

    Appellant

C.A. No.    29255

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 18 01 0168

DECISION AND JOURNAL ENTRY

Dated: May 13, 2020

HENSAL, Presiding Judge.

{¶1}    Antoine Aramouni appeals his conviction for gross sexual imposition from the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2}    Certain facts underlying this appeal are not in dispute. Mr. Aramouni, a 64-year-old male at the time of the incident, worked part-time at a cigar and wine shop. The victim, an 18-year-old male at the time of the incident, went to the shop to buy a corncob pipe. While there, the two men met and discussed the various products in the shop, and the victim expressed an interest in smoking tobacco from a hookah. The men also discussed the relationship and family issues the victim was experiencing at the time. Mr. Aramouni eventually invited the victim to his house to smoke tobacco from a hookah, and the victim accepted because he was looking for someone to talk to about his personal issues.

{¶3} The men exchanged cell phone numbers and arranged to meet a few days later. According to the victim, the men ended up meeting later that evening. According to Mr. Aramouni, the men ended up meeting the following evening. Regardless, there was no dispute that the victim went to Mr. Aramouni's house, and that Mr. Aramouni prepared tobacco for the men to smoke, which they both smoked from the hookah at the kitchen table.

{¶4} According to the victim, he began to feel an "out of body" experience soon after smoking. He began to cough and asked for a glass of water. Mr. Aramouni offered him two drinks: a glass of orange juice, and a glass of red wine. The victim drank most of the orange juice and a few sips of wine. The victim also acknowledged that he drank some vodka, which he had brought with him. After smoking some more, the victim testified that he started to feel lethargic and passed out. He awoke on Mr. Aramouni's couch. The victim's pants and underwear had been pulled down, Mr. Aramouni was touching the victim's genitals, and the victim's hand was on Mr. Aramouni's genitals. The victim testified that he did not place his hand on Mr. Aramouni's genitals, and surmised that Mr. Aramouni must have placed his (the victim's) hand on them. On cross-examination, the victim acknowledged that he did not see Mr. Aramouni place his (the victim's) hand on Mr. Aramouni's genitals because he was passed out.

{¶5} The victim testified that he immediately got up and started to leave, but that Mr. Aramouni told him he had a gun and would shoot him if he left. The victim assured Mr. Aramouni that he would be back, and Mr. Aramouni let him go. The victim testified that he immediately drove to the closest public place, which was a Domino's Pizza. He called the police who, upon arriving, contacted EMS. The victim described the above events to the responding officer, who observed that the victim was excited and talking very fast, which he considered to be consistent with someone who had undergone a traumatic event. EMS evaluated the victim at the scene, but

the victim declined further medical treatment that evening. The victim testified that after he left Domino's, the police pulled him over for going 100 m.p.h. on the highway, and – after the police let him go – he attempted to commit suicide by shooting himself, but the gun did not fire.

{¶6} The following day, the victim went to the hospital and a SANE nurse administered a rape kit. A DNA analyst with the Bureau of Criminal Investigation later determined that a DNA profile consistent with Mr. Aramouni's DNA was present on the waistband of the victim's underwear. Additionally, a toxicologist with the Summit County Medical Examiner's office examined a urine sample taken from the victim the day after the incident, which testified positive for ethyl sulfate (a metabolite of alcohol), THC (the primary metabolite for marijuana), and Ambien (a sedative hypnotic). The victim acknowledged that he consumed alcohol, but testified that he never knowingly ingested marijuana or Ambien.

{¶7} A grand jury indicted Mr. Aramouni on one count of corrupting another with drugs (i.e., Ambien) in violation of Revised Code Section 2925.02(A)(1), one count of gross sexual imposition in violation of Section 2907.05(A)(2), and one count of gross sexual imposition in violation of Section 2907.05(A)(5). Mr. Aramouni pleaded not guilty and the matter proceeded to a jury trial.

{¶8} The victim testified at trial as to the events described above. Mr. Aramouni testified on his own behalf. Mr. Aramouni acknowledged that he and the victim smoked tobacco from a hookah together, but testified that he offered the victim cranberry juice to drink, not orange juice or wine. He testified that he did not mix drugs or anything else in the tobacco or cranberry juice. He also testified that no sexual contact occurred, and that he never threatened to shoot the victim. Rather, he testified, the victim left his house to meet a friend.

{¶9} The jury returned a verdict of not guilty on the counts for corrupting another with drugs, and gross sexual imposition under Section 2907.05(A)(2). The jury found Mr. Aramouni guilty of gross sexual imposition under Section 2907.05(A)(5). He now appeals his conviction, raising two assignments of error for this Court's review.

II.

ASSIGNMENT OF ERROR I

APPELLANT'S CONVICTION FOR GROSS SEXUAL IMPOSITION UNDER R.C.[]2907.05(A)(5) WAS BASED UPON INSUFFICIENT EVIDENCE AS A MATTER OF LAW, AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶10} In his first assignment of error, Mr. Aramouni challenges both the sufficiency and manifest weight of the evidence presented at trial. It is well established, however, that "a review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations." *State v. Vicente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 18. Accordingly, "it is not appropriate to combine a sufficiency argument and a manifest weight argument within a single assignment of error." *State v. Mukha*, 9th Dist. Wayne No. 18AP0019, 2018-Ohio-4918, ¶ 11; *see* Loc.R. 7(B)(7) of the Ninth District Court of Appeals ("Each assignment of error shall be separately discussed * * *."); App.R. 12(A)(2) ("The court may disregard an assignment of error presented for review if the party raising it fails to * * * argue the assignment separately in the brief[.]"). Nonetheless, we exercise our discretion to consider the merits of Mr. Aramouni's combined assignment of error.

{¶11} Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a

reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶12} On the other hand, when considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 9th Dist. Summit No. 29290, 2019-Ohio-3970, ¶ 26.

{¶13} As previously noted, the jury found Mr. Aramouni guilty of gross sexual imposition under Section 2907.05(A)(5), which provides, in part, that:

> [n]o person shall have sexual contact with another, not the spouse of the offender; [or] cause another, not the spouse of the offender, to have sexual contact with the offender * * * when * * * [t]he ability of the other person to resist or consent * * * is substantially impaired because of a mental or physical condition * * *, and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person * * * is substantially impaired because of a mental or physical condition * * *.

The jury found him not guilty of gross sexual imposition under Section 2907.05(A)(2), which provides, in part, that:

> [n]o person shall have sexual contact with another, not the spouse of the offender; [or] cause another, not the spouse of the offender, to have sexual contact with the offender * * * when * * * [f]or the purpose of preventing resistance, the offender substantially impairs the judgment or control of the other person * * * by administering any drug, intoxicant, or controlled substance to the other person surreptitiously or by force, threat of force, or deception.

Mr. Aramouni argues that the State's entire theory of the case was that Mr. Aramouni administered impairing substances to the victim, and then sexually assaulted him while he was unconscious. Mr. Aramouni argues that, because the jury found him not guilty of gross sexual imposition under Section 2907.05(A)(2) – thereby rejecting the State's theory that he administered impairing substances to the victim – his conviction under Section 2907.05(A)(5) necessarily fails as being unsupported by sufficient evidence. He insists that the jury must have relied upon speculation or conjecture in order to find him guilty under Section 2907.05(A)(5), or that it reached a "compromise verdict" whereby it found him guilty of a lesser offense in order to avoid acquitting him altogether.

{¶14} As previously noted, Section 2907.05(A)(5) prohibits sexual contact with another when that person's ability to resist or consent is substantially impaired, and the offender knows or has reasonable cause to believe that the victim's ability to resist or consent to sexual contact is substantially impaired. Here, by virtue of its finding Mr. Aramouni not guilty under Section 2907.05(A)(2), the jury did not find beyond a reasonable doubt that Mr. Aramouni administered drugs to the victim surreptitiously, by force, threat of force, or deception. *See* R.C. 2907.05(A)(2). That determination, however, in no way precluded the jury from otherwise finding that Mr. Aramouni knew or should have known that the victim's ability to resist or consent to sexual contact was substantially impaired. Nor did it require the jury to resort to speculation or conjecture to reach that decision. In other words, nothing prohibited the jury from determining that the State did not establish beyond a reasonable doubt that Mr. Aramouni drugged the victim, yet still determining that the State established beyond a reasonable doubt that the victim's ability to resist or consent to sexual contact was substantially impaired, that Mr. Aramouni knew or had reasonable cause to believe that the victim's ability to resist or consent to sexual contact was substantially

impaired, and that Mr. Aramouni had sexual contact with the victim. Simply put, the jury could have determined that – although Mr. Aramouni did not drug the victim – he still had sexual contact with the victim while he was passed out, or was otherwise unable to resist or consent to sexual contact. *See, e.g.*, *State v. Wine*, 3d Dist. Auglaize No. 2-12-01, 2012-Ohio-2837, ¶ 50 (noting that "an offender may * * * be convicted of committing gross sexual imposition against a sleeping victim under R.C. 2907.05(A)(5)."). We, therefore, reject Mr. Aramouni's challenge to the sufficiency of the evidence.

{¶15} In his challenge to the manifest weight of the evidence, Mr. Aramouni argues that the victim lacked credibility. Specifically, he points to the fact that: (1) the victim claimed he was rendered unconscious, yet shortly thereafter drove to Domino's where he presented to the police officers as hyperactive, and – after leaving Domino's – was pulled over for driving 100 m.p.h. on the highway; (2) there was no evidence that he (Mr. Aramouni) possessed a gun, and the victim's testimony that he (Mr. Aramouni) let him leave his house after the victim assured him that he would return was "preposterous"; (3) the victim never told the police or SANE nurse about the suicide attempt he made after leaving Domino's; (4) the victim did not mention during his direct examination that, when he awoke, his hand was on Mr. Aramouni's genitals; and (5) the victim testified that he did not put his hand on Mr. Aramouni's genitals, yet claimed to have no memory of anything that occurred while he was passed out.

{¶16} As the Ohio Supreme Court has stated, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. This is because "the jury 'is best able to view witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *State v. Taylor*, 9th Dist. Summit No.

25490, 2011-Ohio-5009, ¶ 26, quoting *State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30. "[I]n reaching its verdict, the jury is free to believe all, part, or none of the testimony of each witness." *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35. "This Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe certain witness' testimony over the testimony of others." *State v. Hill*, 9th Dist. Summit No. 26519, 2013-Ohio-4022, ¶ 15.

{¶17} In reaching its verdict, the jury chose to believe at least part of the victim's testimony, which it was free to do. The fact that it chose to believe the State's version of the events is not a basis for reversal under the manifest-weight standard. Having reviewed the record, this Court cannot say that this is the exceptional case in which the evidence weighs heavily against the conviction. We, therefore, reject Mr. Aramouni's challenge to the manifest weight of the evidence. In light of the foregoing, Mr. Aramouni's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

APPELLANT ARAMOUNI'S CONVICTION FOR GROSS SEXUAL IMPOSITION UNDER R.C.[]2907.05(A)(5) MUST BE VACATED, AS THAT STATUTORY SECTION IS UNCONSTITUTIONALLY VOID FOR VAGUENESS.

{¶18} In his second assignment of error, Mr. Aramouni argues that Section 2907.05(A)(5) is unconstitutionally vague and, therefore, his conviction thereunder should be vacated. For the reasons that follow, this Court declines to address the merits this argument.

{¶19} "The failure to raise a constitutional issue at the trial level forfeits the right to make a constitutional argument on appeal." *State v. McCraw*, 9th Dist. Medina No. 14CA0009-M, 2015-Ohio-3809, ¶ 5, citing *State v. Awan*, 22 Ohio St.3d 120 (1986), syllabus. "While a defendant who forfeits such an argument still may argue plain error on appeal, this court will not sua sponte undertake a plain-error analysis if a defendant fails to do so." *Id.* As the State points out, Mr.

Aramouni did not challenge the constitutionality of Section 2907.05(A)(5) at the trial level, nor has he presented a plain-error argument on appeal. This Court will not construct such an argument on his behalf. *Id.* Accordingly, Mr. Aramouni's second assignment of error is overruled.

III.

{¶20} Mr. Aramouni's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

SCHAFER, J.
TEODOSIO, J.
CONCUR.


APPEARANCES:

MICHAEL T. CALLAHAN, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO GUEST, Assistant Prosecuting Attorney, for Appellee.