[Cite as *State v. Whitfield*, 2022-Ohio-4205.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

    v.                                        :

DARNELL WHITFIELD,               :

    Defendant-Appellant.     :

No. 111377

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 23, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-662871-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Amanda Hall, Assistant Prosecuting Attorney, *for appellee.*

Allison S. Breneman, *for appellant.*


CORNELIUS J. O'SULLIVAN, JR., J.:

{¶ 1} Defendant-appellant, Darnell Whitfield, appeals his rape conviction that was rendered after a bench trial. After a thorough review of the facts and pertinent law, we affirm.

**Procedural and Factual History**

{¶ 2} In September 2021, a Cuyahoga County Grand Jury indicted appellant on a sole count of rape, a felony of the first degree in violation of R.C. 2907.02(A)(2). Appellant waived his right to a jury trial, and the case proceeded to a bench trial. The record and evidence at trial demonstrate the following facts.

{¶ 3} The incident occurred in October 2017. At the time, the victim, S.R., was 17 years old and appellant was a few weeks shy of his 21st birthday. According to S.R., they had known each other for "a couple months" prior to the incident. S.R. testified that she met appellant through a coworker at her job at Pizza Hut. S.R. told her coworker that she was interested in meeting someone she could "be friends with, be cool with," and the coworker suggested appellant. The coworker showed S.R. a picture of appellant, and S.R. told the coworker "[h]e seemed cool, cute."

{¶ 4} S.R. testified that she initially reached out to appellant on Facebook. Thereafter, the two had three face-to-face encounters. At the first meeting, S.R., her cousin, and a friend met appellant and the group talked for about an hour. Appellant and S.R. exchanged phone numbers at that first meeting and thereafter began texting each other.

{¶ 5} S.R.'s second encounter with appellant occurred at her house where she lived with her mother. Her mother was not home at the time, but her cousin was at the house and interacting with S.R. and appellant. S.R. testified that appellant tried to "feel on [her] private area"; she told him to stop because her cousin was on the couch with them. Appellant "laughed [it] off and [he] stopped."

{¶ 6} The victim testified that the third encounter — the within incident — occurred when she met appellant at a house on Donald Avenue in Cleveland. She went by herself and believed she and appellant were going to "chill." S.R. testified that her understanding of "chill" did not involve sexual activity.

{¶ 7} Initially, the victim and appellant were talking. However, appellant "grabbed" S.R. by her arm and put her on his lap. He was trying to kiss her, and she was attempting to prevent him from doing so. Appellant then laid her on the floor, pulled her pants down to her ankles, and raped her. S.R. testified that during the course of this conduct she was hitting him and telling him to get off of her but he did not. S.R. was unable to free herself because, as she testified, appellant was "way bigger," and "stronger" than she was. The victim testified that she was praying for it to be over, then she "blacked out," and when she "came to," she was underneath a table. S.R. was wearing glasses during the incident; the glasses came off her face and became damaged.

{¶ 8} When the rape was over, S.H. looked for her glasses while appellant repeatedly told her that he thought she "was playing." S.H. testified that she told appellant, "how did you think I was f[***]ing playing when I was hitting you to get off of me and kept asking you to get off of me."

{¶ 9} S.R. left the house and went to a friend's house and told the friend what happened. The friend took S.R. home, and S.R. told her mother about the incident. Her mother testified that S.R. appeared "scared" and "upset" as she recounted the incident to her. The mother took S.R. to the hospital where a sexual-assault nurse

examiner ("SANE nurse") administered a sexual-assault examination. The SANE nurse testified that S.R. "appeared shook up." A photograph of S.R.'s broken glasses was taken at the hospital and admitted into evidence.

{¶ 10} Law enforcement presented a photographic line up to S.R.; she identified appellant as the perpetrator. Appellant's DNA was found in the samples collected as part of the sexual assault examination.

{¶ 11} Appellant did not deny having a sexual encounter with S.R. but maintained that it was consensual.

{¶ 12} The trial court found appellant guilty of the sole count of the indictment, rape in violation of R.C. 2907.02(A)(2). Appellant presents the following two assignments of error for our review:

I.    The judge found, against the manifest weight of the evidence, that the appellant committed the acts alleged in the indictment.

II.   The evidence was not legally sufficient to sustain a guilty verdict.

## The Evidence is Sufficient to Support the Rape Conviction

{¶ 13} We consider appellant's second assignment of error — regarding sufficiency of the evidence — first because if the evidence is not sufficient that would be dispositive of this appeal.

{¶ 14} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio

St.3d 259, 574 N.E.2d 492 (1981), paragraph two of the syllabus. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, 968 N.E.2d 27, ¶ 25 (1st Dist.).

**{¶ 15}** In support of his contention that the conviction was not supported by sufficient evidence, appellant maintains that the state failed to prove that he acted purposely, as required by R.C. 2907.02(A)(2).

**{¶ 16}** R.C. 2907.02 provides in relevant part that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(2). "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1).

**{¶ 17}** "A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or

creates the belief that physical force will be used if the victim does not submit." *State v. Schaim*, 65 Ohio St.3d 51, 600 N.E.2d 661 (1992), paragraph one of the syllabus.

{¶ 18} "Ohio Supreme Court case law demonstrates that the type and amount of force necessary to purposefully compel a victim to submit 'by force or threat of force' depends upon the victim and offender's relationship." *State v. Wine*, 3d Dist. Auglaize No. 2-12-01, 2012-Ohio-2837, ¶ 41. "The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other." *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988), paragraph one of the syllabus. "'As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established.'" *Id.* at 59, quoting *State v. Fowler*, 27 Ohio App.3d 149, 154, 500 N.E.2d 390 (8th Dist.1985).

{¶ 19} S.R.'s testimony was sufficient to sustain the rape conviction. She testified that appellant "grabbed" her by her arm and put her on his lap. He was trying to kiss her, and she was attempting to prevent him from doing so. Appellant then laid her on the floor, pulled her pants down to her ankles, and raped her. S.R. testified that she was resisting both physically and verbally but appellant was "way bigger" and "stronger" than she was and she could not free herself. Further, he ignored her verbal commands. The victim testified that she was praying for it to be over, then she "blacked out," and when she "came to," she was underneath a table. The glasses she was wearing came off her face and were damaged during the rape.

This testimony was sufficient to demonstrate that appellant acted purposely; that is, that it was his specific intention to engage in conduct of that nature.

{¶ 20} The second assignment of error is overruled.

**The Rape Conviction is Not Against the Manifest Weight of the Evidence**

{¶ 21} In his first assignment of error, appellant contends that the court's verdict is against the manifest weight of the evidence. We disagree.

> To evaluate a claim that a jury verdict is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial.

*State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 168, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 22} Appellant contends that S.R.'s memory at trial was not reliable because she answered "I don't know" or "I don't remember" to some of the questions. While accurate that S.R. testified that she did not remember some details of her interactions with appellant leading up to the day of the incident, as related to the date of the attack and details of the rape, S.R. showed excellent recall. Appellant forced her onto his lap, tried to kiss her while she resisted, laid her down on the floor,

pulled her pants down, and despite her physical and verbal protestations, he raped her. This testimony was quite clear and succinct.

{¶ 23} Substantial evidence that S.R. reported the rape and was traumatized by it was corroborated by her mother and the SANE nurse who utilized the rape kit to gather physical evidence. Her mother testified that S.R. appeared "scared" and "upset" when recounting the details of the rape. Likewise, the SANE nurse testified that S.R. "appeared shook up" during the interview and examination.

{¶ 24} Considering the evidence presented, this is not the exceptional case where the evidence weighs heavily against the conviction. Examining the entire record, we find the evidence submitted by the state clearly supports this conviction. The first assignment of error is overruled.

{¶ 25} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
CORNELIUS J. O'SULLIVAN, JR., JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR