[Cite as *State v. Grimes*, 2022-Ohio-4526.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

     Plaintiff-Appellee,          :

                                      No. 110925

     v.                           :

JEFFREY GRIMES,                         :

     Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 15, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-19-639447-B and CR-20-650118-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Jeffrey Schnatter and Carla Neuhauser,
Assistant Prosecuting Attorneys, *for appellee*.

Erin R. Flanagan, *for appellant*.

ANITA LASTER MAYS, P.J.:

{¶ 1}  Appellant Jeffrey Grimes ("Grimes") appeals his convictions for multiple charges. We affirm.

## I. BACKGROUND AND FACTS

{¶ 2}    Grimes was indicted on the following counts in Cuyahoga C.P. No. CR-19-639447-B on May 6, 2019, charging him and his adult girlfriend, A.R., with the following:

| COUNT | OFFENSE | DEGREE |
|---|---|---|
| 1 | Rape in violation of R.C. 2907.02(A)(1)(c) with a Sexually Violent Predator Specification pursuant to R.C. 2941.148(A) | F1 |
| 2 | Rape in violation of R.C. 2907.02(A)(1)(c) with a Sexually Violent Predator Specification pursuant to R.C. 2941.148(A) | F1 |
| 3 | Rape in violation of R.C. 2907.02(A)(2) with a Sexually Violent Predator Specification pursuant to R.C. 2941.148(A) | F1 |
| 4 | Rape in violation of R.C. 2907.02(A)(2) with a Sexually Violent Predator Specification pursuant to R.C. 2941.148(A) | F1 |
| 5 | Sexual Battery in violation of R.C. 2907.03(A)(5) with a Sexually Violent Predator Specification pursuant to R.C. 2941.148(A) | F3 |
| 6 | Sexual Battery in violation of R.C. 2907.03(A)(5) | F3 |
| 7 | Sexual Battery in violation of R.C. 2907.03(A)(5) with a Sexually Violent Predator Specification pursuant to R.C. 2941.148(A) | F3 |
| 8 | Corrupting Another With Drugs in violation of R.C. 2925.02(A)(4)(a) | F2 |
| 9 | Pandering Sexually Oriented Matter Involving a Minor in violation of R.C. 2907.322(A)(3) | F2 |

| COUNT | OFFENSE | DEGREE |
|---|---|---|
| 10 | Pandering Sexually Oriented Matter Involving a Minor in violation of R.C. 2907.322(A)(3) | F2 |
| 11 | Pandering Sexually Oriented Matter Involving a Minor in violation of R.C. 2907.322(A)(3) | F2 |

{¶ 3} On May 18 2020, in Cuyahoga C.P. No. CR-20-650118-A, Grimes was indicted for the following:

| COUNT | OFFENSE | DEGREE |
|---|---|---|
| 1 | Sexual Battery in violation of R.C. 2907.03(A)(5) with a Sexually Violent Predator Specification pursuant to R.C. 2941.148(A) | F3 |
| 2 | Pandering Sexually Oriented Matter Involving a Minor in violation of R.C. 2907.322(A)(1) | F2 |
| 3 | Pandering Sexually Oriented Matter Involving a Minor in violation of R.C. 2907.322(A)(5) | F4 |
| 4 | Sexual Battery in violation of R.C. 2907.03(A)(5) with a Sexually Violent Predator Specification pursuant to R.C. 2941.148(A) | F3 |
| 5 | Pandering Sexually Oriented Matter Involving a Minor in violation of R.C. 2907.322(A)(1) | F2 |

| COUNT | OFFENSE | DEGREE |
| --- | --- | --- |
| 6 | Pandering Sexually Oriented Matter Involving a Minor in violation of R.C. 2907.322(A)(5) | F4 |
| 7 | Sexual Battery in violation of R.C. 2907.03(A)(5) with a Sexually Violent Predator Specification pursuant to R.C. 2941.148(A) | F3 |
| 8 | Pandering Sexually Oriented Matter Involving a Minor in violation of R.C. 2907.322(A)(1) | F2 |
| 9 | Pandering Sexually Oriented Matter Involving a Minor in violation of R.C. 2907.322(A)(5) | F4 |
| 10 | Sexual Battery in violation of R.C. 2907.03(A)(5) with a Sexually Violent Predator Specification pursuant to R.C. 2941.148(A) | F3 |
| 11 | Pandering Sexually Oriented Matter Involving a Minor in violation of R.C. 2907.322(A)(1) | F2 |
| 12 | Pandering Sexually Oriented Matter Involving a Minor in violation of R.C. 2907.322(A)(5) | F4 |
| 13 | Sexual Battery in violation of R.C. 2907.03(A)(5) with a Sexually Violent Predator Specification pursuant to R.C. 2941.148(A) | F3 |

| COUNT | OFFENSE | DEGREE |
|-------|---------|--------|
| 14 | Pandering Sexually Oriented Matter Involving a Minor in violation of R.C. 2907.322(A)(1) | F2 |
| 15 | Pandering Sexually Oriented Matter Involving a Minor in violation of R.C. 2907.322(A)(5) | F4 |
| 16 | Trafficking in violation of R.C. 2925.03(A)(2) | F4 |
| 17 | Drug Possession in violation of R.C. 2925.11(A) | F4 |
| 18 | Violating a Protection Order in violation of R.C. 2919.27(A)(1) | F5 |

{¶ 4} The 2019 case arose from charges that Grimes made video recordings of his adult girlfriend, A.R., engaging in sexual activity with John Doe ("Doe"), Grimes's son, who was under the age of 16. A.R. was a codefendant and entered into a plea agreement with the state prior to trial. The state argued that Grimes forced A.R. to initiate and engage in activities with Doe. Grimes participated in sexual conduct with A.R. during A.R.'s interactions with Doe and also provided video direction. The videos were stored on Grimes's cell phone. Doe's mother ("Mother") and stepfather ultimately learned of the sexual activities as well as Doe's consumption of drugs and alcohol at Grimes's residence. The Parma Police Department ("PPD") was contacted, and Grimes and A.R. were ultimately arrested. The 2020 case was initiated after additional video recordings and drugs were

recovered based on Grimes's recorded jail phone conversations while incarcerated pending trial.

{¶ 5} The cases were combined for the September 13, 2021 trial. The state presented six witnesses. Doe did not testify.

{¶ 6} Mother testified about her history with Grimes and Grimes's relationship with Doe. Mother described various events that indicated Doe was not properly supervised when he was in Grimes's care. Mother advised Grimes that she would end voluntary visitation, and Grimes became angry. Mother stated, "He is an extremely angry person. Most people fear him. He does not show any fear ever. I personally have feared him since I met him." Tr. 401. Shortly thereafter, Mother learned about the drug use and sexual activity and contacted the police.

{¶ 7} Codefendant A.R. addressed the charges against her and her decision to testify for the state. A.R. agreed to testify truthfully regarding the charged activities and to plead guilty to endangering children, a third-degree felony. There was no agreement regarding the penalty that could range from probation to a three-year prison term.

{¶ 8} A.R. testified about her history of oppressive relationships with men and drug use purportedly patterned after her mother. A.R.'s history with Grimes began with an off-and-on relationship when A.R. was 17, a hiatus of approximately nine years, and reengagement in 2016. A.R. moved in with Grimes at his mother's home, and the two engaged in what A.R. described as a swinging sexual lifestyle

though Grimes was sometimes upset with A.R. after the activities. Tr. 590. A.R. testified about her drug use with Grimes and his physical aggression toward her.

{¶ 9} Doe visited the house several times beginning in 2018 and shortly thereafter moved in. A.R. recounted her participation in alcohol consumption and sexual activities with Doe who was sometimes noticeably intoxicated. During the initial encounter, Grimes ordered A.R. to give Doe a lap dance and perform sexual acts. Doe "seemed shocked and nervous." Tr. 596. "We were all drinking." Tr. 596. Activities escalated when Grimes ordered A.R. to have intercourse with Doe. "I told him no, and he told me he would beat my ass." Tr. 601. "I did not want to fight." Tr. 606. A.R. stated that she knew there would "be consequences" if she refused "[b]ecause of physical abuse" she "was put through by" Grimes. Tr. 606.

{¶ 10} A.R. also knew that Grimes recorded the sexual occurrences and testified about the video exhibits. Doe did not initiate the sexual activities, and A.R. testified that her participation was involuntary. A.R. did not witness Doe using drugs, but Grimes told A.R. that he had given Doe drugs because he would rather have Doe do drugs with him than in the streets. A.R. also stated she was using heroin and cocaine daily during the time she resided with Grimes and sometimes her recollection was "cloudy." Tr. 661.

{¶ 11} Sergeant Kalal of the PPD narcotics unit participated in the 2019 arrest warrant execution for A.R. and Grimes. Grimes was secured, and Grimes's mother gave permission for police to check the house and yard for A.R. During the search, a video recording system was observed that was pointed toward the

basement bed.  Police also observed drug paraphernalia in plain view.  A search warrant was obtained based on the observations.  Additional drug paraphernalia was discovered including suspected drugs.

{¶ 12} Grimes's friend, K.B., who acted as the phone liaison between the incarcerated Grimes and Doe, testified that she was informed that Grimes's legal issues stemmed from A.R.'s sexual involvement with Doe.  Grimes asked K.B. to contact various people and to call Doe — not to text.  However, K.B. sent a text that was read into the record that advised Doe that Doe did not have to say anything that was not true.  K.B. also had a telephone conversation with Doe to convey the same information.  Contact ceased when Mother asked K.B. not to contact her son.

{¶ 13}  Forensic psychologist Dr. James Eisenberg testified regarding his evaluation of A.R., which was requested by the office of the Cuyahoga County Public Defender.  Dr. Eisenberg was requested to

> do an evaluation to determine if she was a victim of domestic violence, what I would call intimate partner violence, similar to battered women's syndrome and, secondly, whether or not that was pertinent to the issue of duress under the Ohio code regarding participation in an alleged criminal act.

Tr. 734.

{¶ 14}  Dr. Eisenberg reviewed records and reports.  He also met with A.R., who had not entered a plea agreement at the time; so at that point, he was conducting "a straight evaluation of her regarding her pending criminal case" "to determine if in fact she was a battered woman." Tr. 743.  Dr. Eisenberg recounted A.R.'s drug abuse issues and reviewed records relating to A.R. and, after A.R. entered

a plea agreement, reviewed additional records such as jail phone call recordings between A.R. and Grimes.

{¶ 15} Dr. Eisenberg opined that the phone calls revealed "typical patterns of abuse. [Grimes] was telling her certainly that he loved her. On the other hand he was yelling and blaming her for cooperating with [the state]." Tr. 749. Dr. Eisenberg also opined that Grimes "had enormous control" "through a variety of techniques and tactics * * *." Tr. 749-750. "[A.R.] was afraid of him, whether or not he was with her" "and still loved him on the other hand." Tr. 750.

{¶ 16} The state closed with Detective Fullerton of the PPD who investigates sexual assaults of minors. He met with Mother and Mother's husband in response to a report received on April 10, 2019, and ultimately met with Doe. Detective Fullerton was able to secure arrest warrants for Grimes and A.R. based on the information received. He was also present during the warrant execution and confirmed the testimony of Sergeant Kalal.

{¶ 17} The jury viewed the video of Detective Fullerton's post-arrest interview with Grimes. Grimes denied being present during or participating in sexual activity between A.R. and Doe. Grimes told Detective Fullerton during that interview that the interior security cameras were on a live feed to be viewed in real time and were accessible via cell phone. The interview occurred prior to extraction of the video evidence that depicted Grimes's involvement in the activities.

{¶ 18} Grimes advised Detective Fullerton that he would provide access to additional videos that would exonerate him. At a meeting with the detective and

defense counsel, Grimes was allowed to view the videos secured from Grimes's SD card at the time of his arrest. Grimes retracted his offer to provide exonerating videos, but the videos were secured by warrant. Grimes also appeared in the new videos. Detective Fullerton heard several jail call recordings between Grimes and others, including A.R., who connected via three-way connection through Grimes's mother.

{¶ 19} Doe did not testify at trial. The defense motion for judgment of acquittal under Crim.R. 29 proffered at the close of the state's case was denied. The defense rested, and the renewed acquittal motion was denied.

{¶ 20} Grimes was convicted in Case No. CR-19-639447-B of the following:

On a former day of court the jury returned a verdict of guilty of rape [R.C.] 2907.02(A)(1)(c), [a felony one] with sexual violent predator specification(s) as charged in count(s) 1, 2 of the indictment. On a former day of court the jury returned a verdict of guilty of rape [R.C.] 2907.02A)(2) [a felony one] with sexual violent predator specification(s) as charged in count(s) 3, 4 of the indictment. On a former day of court, the jury returned a verdict of guilty of sexual battery [R.C.] 2907.03(A)(5) [felony] with sexual violent predator specification(s) as charged in count(s) 5, 7 of the indictment. On a former day of court the jury returned a verdict of guilty of sexual battery [R.C.] 2907.03(A)(5) as charged in count(s) 6 of the indictment.

On a former day of court the jury returned a verdict of guilty of corrupting another with drugs [R.C.] 2925.02(A)(4)(A) [a felony 2] as charged in count(s) 8 of the indictment.

On a former day of court the jury returned a verdict of guilty of pandering sexually oriented matter involving a minor [R.C.] 2907.322(A)(3) [a felony 2] as charged in count(s) 9, 10, 11 of the indictment.

JE 118844631 9/28/21

**{¶ 21}** In Case No. CR-20-650118-A, Grimes was convicted of the following:

On a former day of court the jury returned a verdict of guilty of sexual battery [R.C.] 2907.03(A)(5) [a felony 3] with sexual violent predator specification(s) as charged in count(s) 1, 4, 7, 10, 13 of the indictment.

On a former day of court the jury returned a verdict of guilty of pandering sexually oriented matter involving a minor [R.C.] 2907.322(A)(1) [a felony 2] as charged in count(s) 2, 5, 8, 11, 14 of the indictment.

On a former day of court the jury returned a verdict of guilty of pandering sexually oriented matter involving a minor [R.C.] 2907.322(A)(5) [a felony 4] as charged in count(s) 3,6, 9, 12, 15 of the indictment.

On a former day of court the jury returned a verdict of guilty of trafficking offense [R.C.] 2925.03(A)(2) [a felony 4] as charged in count(s) 16 of the indictment.

On a former day of court the jury returned a verdict of guilty of drug possession [R.C.] 2925.11 [a felony 4] as charged in count(s) 17 of the indictment.

On a former day of court the jury returned a verdict of guilty of violating protection order. Consent agreement. Anti-stalking [R.C.] 2919.27(A)(1) [a felony 5] as charged in count(s) 18 of the indictment.

JE 118844672  8/28/21, p. 1.

**{¶ 22}** Grimes was also found guilty of the sexually violent predator specifications.  Grimes received a total combined sentence of 65 years to life.

**{¶ 23}** Grimes appeals.

## II.  Assigned Errors

**{¶ 24}** Grimes asserts the trial court abused its discretion or committed plain error when it admitted impermissible character evidence of Grimes's tendency toward aggressive behavior.  Grimes secondly claims that the rape convictions are

against the manifest weight of the evidence absent the impermissible character testimony.

## III. Discussion

### A. Impermissible character evidence

{¶ 25} Grimes argues that the admission of evidence regarding Grimes's aggressiveness was not relevant except to show disposition and propensity, and the prejudicial testimony of Mother and A.R. outweighed its probative value. Thus, Grimes argues the testimony was improperly admitted in contravention of Evid.R. 404(B).

{¶ 26} To the extent that this argument is raised for the first time on appeal, it will be reviewed for plain error.

> "[A] reviewing court's analysis is generally limited to reviewing issues raised on appeal solely for plain error or defects affecting a defendant's substantial rights pursuant to Crim.R. 52(B). *State v. Tisdale*, 8th Dist. Cuyahoga No. 74331, 1998 Ohio App. LEXIS 6143 (Dec. 17, 1988). The plain error doctrine should be invoked by an appellate court only in exceptional circumstances to prevent a miscarriage of justice. *State v. Cooperrider*, 4 Ohio St.3d 226, 227, 448 N.E.2d 452 (1983). Plain error will be recognized only where, but for the error, the outcome of the case would clearly have been different. *Id.*"

*State v. Bell*, 8th Dist. Cuyahoga No. 106842, 2019-Ohio-340, ¶ 61, quoting *State v. King*, 184 Ohio App.3d 226, 2009-Ohio-4551, 920 N.E.2d 399, ¶ 8 (8th Dist.).

{¶ 27} "The admissibility of other-acts evidence under Evid.R. 404(B) is a question of law" that we review de novo. *State v. Hartman,* 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22. However, "the trial court's weighing of the probative value of admissible evidence against the danger of unfair prejudice to the

defendant under Evid.R. 403(A) involves an exercise of judgment." *State v. Kamer*, 6th Dist. Wood No. WD-20-084, 2022-Ohio-2070, ¶ 132, citing *State v. Worley*, 164 Ohio St.3d 589, 2021-Ohio-2207, 174 N.E.3d 754, ¶ 117, citing *Hartman* at ¶ 30. "[S]o we review that decision for an abuse of discretion." *Id.*, citing *id.* An abuse of discretion occurs where "'the trial court's attitude, in reaching its decision, was arbitrary, unreasonable, or unconscionable.'" *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 34, quoting *Celmer v. Rodgers*, 114 Ohio St.3d 221, 2007-Ohio-3697, 871 N.E.2d 557, ¶ 19 (plurality opinion).

{¶ 28} Evid.R. 404(B) provides:[1]

(B) Other crimes, wrongs or acts.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

{¶ 29} Evid.R. 403(A) adds that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." The exclusion of relevant evidence under Evid.R. 403(A) rests within the discretion of the trial

---

[1] "This is the version of Evid.R. 404(B) in effect at the time of the trial. Mostly non-substantive changes to division (B) went into effect on July 1, 2022. The quoted provision is now split between Evid.R. 404(B)(1) and (2)." *State v. Clinger*, 12th Dist. Preble No. CA2021-11-014, 2022-Ohio-3691, ¶ 15, fn. 2.

court. *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 107, citing *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus.

{¶ 30} The Ohio Supreme Court concurrently issued *Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, and *State v. Smith*, 162 Ohio St.3d 353, 2020-Ohio-4441, 165 N.E.3d 112, to provide guidance and clarification regarding other acts evidence analysis under Evid.R. 404(B).

> We * * * use this case — as well as *State v. Smith* * * *, another case decided today — to help clear up some of the confusion that exists regarding the use of other-acts evidence. Thus, we endeavor to provide trial courts with a road map for analyzing the admission of other-acts evidence and guidance as to appropriate instructions for the jury when such evidence is admitted.

*Hartman* at ¶ 19.

{¶ 31} "Evid.R. 404(B) categorically prohibits evidence of a defendant's other acts when its only value is to show that the defendant has the character or propensity to commit a crime." *Smith* at ¶ 36, citing *Hartman* at ¶ 22. "Other-acts evidence may, however, be admissible for another non-character-based purpose, such as 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *Id.*, quoting *id.* "'The key is that the evidence must prove something other than the defendant's disposition to commit certain acts.'" *Id.*, quoting *id.*

{¶ 32} "The threshold question is whether the evidence is relevant." *Smith* at ¶ 37, citing *Hartman* at ¶ 24; Evid.R. 401; *see also State v. Williams*, 134 Ohio

St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20. "[T]he problem with other-acts evidence is rarely that it is irrelevant; often, it is too relevant." *Id.*, citing *Hartman* at ¶ 25; see 1A Wigmore, *Evidence*, Section 58.2, at 1212 (Tillers Rev.1983). For purposes of Evid.R. 404(B), "the relevance examination asks whether the proffered evidence is relevant to the particular purpose for which it is offered, as well as whether it is relevant to an issue that is actually in dispute." *Id.*, citing *Hartman* at ¶ 26-27; *see also Huddleston v. United States*, 485 U.S. 681, 686, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

{¶ 33} If the court determines that the evidence is probative of an issue in the case and is not based on not grounded on improper character inferences, the next question is whether the value of the evidence "'is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.'" *Smith,* 162 Ohio St.3d 353, 2020-Ohio-4441, 165 N.E.3d 112, at ¶ 38, quoting Evid.R. 403(A); *Hartman,* 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, at ¶ 29. "Because other-acts evidence "'almost always carries some risk that the jury will draw the forbidden propensity inference,'" courts should be vigilant in balancing the prejudicial impact of the evidence against its probative value." *Id.*, quoting

*Hartman* at ¶ 33, quoting *United States v. Gomez*, 763 F.3d 845, 857 (7th Cir. 2014) (en banc).

**{¶ 34}** R.C. 2907.02(A)(2) governs rape and provides, "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Sexual conduct

> means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

R.C. 2907.01(A).

**{¶ 35}** "Force is an essential element of rape pursuant to R.C. 2907.02(A)(2)." *State v. Clark*, 8th Dist. Cuyahoga No. 101863, 2015-Ohio-3027, ¶ 27. R.C. 2901.01(A) defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." "A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit." *State v. Schaim*, 65 Ohio St.3d 51, 55, 600 N.E.2d 661 (1992), paragraph one of the syllabus.

**{¶ 36}** In fact,

> "Ohio Supreme Court case law demonstrates that the type and amount of force necessary to purposefully compel a victim to submit 'by force or threat of force' depends upon the victim and offender's relationship." *State v. Wine*, 3d Dist. Auglaize No. 2-12-01, 2012-Ohio-2837, ¶ 41. "The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each

other." *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988), paragraph one of the syllabus. "'As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established.'" *Id.* at 59, quoting *State v. Fowler*, 27 Ohio App.3d 149, 154, 500 N.E.2d 390 (8th Dist.1985).

*State v. Whitfield*, 8th Dist. Cuyahoga No. 111377, 2022-Ohio-4205, ¶ 18.

{¶ 37} We find as a matter of law that the trial court did not abuse its discretion in allowing the evidence of force because the "evidence is relevant to a non-character-based issue that is material to the case." *Smith*, 162 Ohio St.3d 353, 2020-Ohio-4441, 165 N.E.3d 112, at ¶ 38, citing Evid.R. 403(A) and *Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, at ¶ 29. The state and Grimes agree that the focus of the trial was to prove the circumstances surrounding the sexual conduct and the element of force for the rape charges, specifically Counts 3 and 4 of the 2019 indictment. Appellant's Brief, p. 9; Appellee's Brief, p. 10.

{¶ 38} A.R. testified that her participation in the activities was unwilling but that she did so in fear of Grimes. During Dr. Eisenberg's testimony regarding A.R., the trial court called a sidebar to ensure that Dr. Eisenberg's testimony was limited to his review of A.R.'s information, not that of Grimes, and that the doctor did not reach a legal conclusion but would "educate on the effects" of the "relationship on the decision-making process of the victim." Tr. 739. The court asked defense counsel whether he objected to the testimony. Counsel responded, "The only objection I have is when it comes time for him to opine whether or not duress was there." Tr. 739. Counsel also objected to a jury instruction on duress to which the

trial court responded there would be no jury instruction on duress and no such instruction was given.

{¶ 39} The trial court cautioned the state to "narrowly approach" the report and focus on "A.R. and her diagnostic impressions." Tr. 740. As an expert, "[Dr. Eisenberg] can certainly opine from her medical history, but he cannot legally just — he cannot come to a legal conclusion because that is the purview of the jury." *Id.* The court also noted that the jury instructions would address assessing the "credibility of A.R. the way they would any other witness." Tr. 740.

{¶ 40} Dr. Eisenberg explained his review based on his retention prior to A.R.'s decision to enter a plea and after the plea agreement, in light of the additional evidence he became privy to. Ultimately, Dr. Eisenberg opined that Grimes exercised enormous control over A.R. and that she feared Grimes but still loved him. "So she was conflicted with her feelings for him as well as the threats that were made towards her." Tr. 750. "My opinion is that she was under his control throughout the entire period up until her probably testifying today or yesterday." Tr. 59.

{¶ 41} Grimes argues that Mother's testimony was irrelevant and inadmissible because she was not present during the alleged rapes and only testified to his forceful nature in general. "'In determining whether to grant a new trial as a result of the erroneous admission of evidence under Evid.R. 404(B), an appellate court must consider both the impact of the offending evidence on the verdict and the strength of the remaining evidence after the tainted evidence is removed from the record.'" *State v. Marshall*, 8th Dist. Cuyahoga No. 109633, 2022-Ohio-2666,

¶ 14, quoting *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, syllabus.

{¶ 42} "Even where a substantial right is impacted, after excluding the impermissible evidence, when there is overwhelming evidence of guilt remaining, then the admission may be deemed harmless." *Id.*, citing *State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, 123 N.E.3d 955, ¶ 177, quoting *Morris* at ¶ 32. Applying this standard to the record before this court, we find that the admission of such evidence was harmless.

{¶ 43} Significant here is Grimes's video interview with Detective Fullerton that was played for the jury. The video includes statements by Grimes with no recorded objections in the record as to content. Grimes described himself as "a [m.f.] you got to fear." Video exhibit No. 45 at 23:24-24:15). Furthermore, Grimes appeared to boast about his control over A.R. and claimed to have kicked her out of his house repeatedly. "I booted her out and I booted her out, take her right back, 'cause she has no one, no one at all, I know what she comes from, the streets, she has a f***ing ratchet mother, and that's it, she has no one, no family at all." (Exhibit No. 45, 32:31-52; 48:56-49:10).

{¶ 44} Grimes also claimed that Mother terminated Doe's visits with Grimes "because [Doe] feared me, I was that strictness he needed * * * He thinks her house

is a joke." (Exhibit No. 45 at 25:44-49). He also spoke of "snatch[ing Doe's] ass up, beat[ing] his little f***ing ass." (Exhibit No. 45 at 22:53-23:08).

{¶ 45} The jury was instructed on the element of force:

Force means any violence, compulsion or constraint physically exerted by any means upon or against a person or thing.

Now, force of a parent, ladies and gentlemen. When a relationship between the victim and the defendant is one of child and parent, the element of force need not be openly displayed or physically brutal. It can be subtle, slight and psychological or emotionally powerful.

Evidence of an express threat or harm or evidence of significant physical restraint is not required. If you find beyond a reasonable doubt that under the circumstances in evidence the victim's will was overcome by fear or duress or intimidation, the element of force has been proven. Threat includes a direct or indirect threat.

Tr. 921-22.

{¶ 46} This court has held:

"Evidence of physical, emotional, and verbal abuse upon the victim or other family members, even if not included in the indictment, has been permitted in numerous jurisdictions, including this one." *State v. Williamson*, 8th Dist. Cuyahoga No. 80982, 2002-Ohio-6503, ¶ 22. In *State v. Williams,* 8th Dist. Cuyahoga No. 74840, 1999 Ohio App. LEXIS 4792 (Oct. 7, 1999), evidence of physical and psychological abuse between the abuser and the victim which transpired in the home was relevant and probative of a method of control used to force sex upon the victim and was inextricably related to the charge of rape and gross sexual imposition.

*State v. Madsen*, 8th Dist. Cuyahoga No. 82399, 2003-Ohio-5822, ¶ 28.

{¶ 47} This court finds that the evidence is probative of the material issue of force in the case and the admission of the evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

*Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, at ¶ at 25, 29. We find no error, plain or otherwise.

{¶ 48} The first assigned error is overruled.

**B. Manifest weight**

{¶ 49} Grimes captions his error as a manifest weight challenge to the rape convictions, but it appears to be an attack from another perspective on the Evid.R. 404(B) argument overruled in the first assigned error.

{¶ 50} "The criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *State v. Ryan*, 8th Dist. Cuyahoga No. 108143, 2019-Ohio-5339, ¶ 21, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "Under the manifest-weight-of-the-evidence standard, a reviewing court must ask the following question: whose evidence is more persuasive — the state's or the defendant's?" *Id.*, citing *Wilson* at *id*. "Although there may be legally sufficient evidence to support a judgment, it may nevertheless be against the manifest weight of the evidence." *Id.*, citing *Thompkins* at 387.

{¶ 51} "'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact finder's resolution of the conflicting testimony.'" *Wilson* at *id.*, quoting *Thompkins* at *id*. "Reversal on manifest weight grounds is reserved for the "'exceptional case in which the evidence

weighs heavily against the conviction."'"" *Ryan* at ¶ 23, quoting *Thompkins* at *id.,* quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.).

{¶ 52} Upon review, this is not an exceptional case in which the evidence weighs heavily against the conviction. We have already determined that the testimony that Grimes challenges was admissible as a matter of law and the trial court did not abuse its discretion in allowing its admission.

{¶ 53} In the instant case, the jury was in the best position to determine the credibility of the witnesses and make "observations that are critical to determining a witness's credibility." *Parma v. Singh*, 8th Dist. Cuyahoga No. 106935, 2018-Ohio-5235, ¶ 21, citing *State v. Clark*, 8th Dist. Cuyahoga No. 94050, 2010-Ohio-4354, ¶ 17. "The trier of fact is free to accept or reject any or all the testimony of any witness." *Id.*, citing *State v. Smith*, 8th Dist. Cuyahoga No. 93593, 2010-Ohio-4006, ¶ 16.

{¶ 54} The jury not only observed the witnesses, but they also watched video evidence of the sexual activities and Grimes's recorded interview. They also heard jail calls regarding the activities and observed testimony from A.R. The jury was also instructed:

> Now, ladies and gentlemen, you the jury are the sole judges of the facts and the credibility of the witnesses and the weight to be given to the testimony of each witness. To weigh the evidence consider the credibility or the believability of each person testifying, and you will apply the tests for truthfulness which you apply in your daily lives.

Tr. 910. The trial court also supplied a nonexhaustive list of tests to apply.

{¶ 55} Instruction was also provided regarding the testimony of A.R. including the warning that an "accomplice may have special motives in testifying" so the jury "should carefully examine an accomplice's testimony and use it with great caution and view it with great suspicion." Tr. 913. The jury was further instructed on the meaning of complicity in the offenses. We presume that the jury followed the trial court's instructions. *State v. Walker-Curry*, 8th Dist. Cuyahoga No. 106228, 2019-Ohio-147, ¶ 35.

{¶ 56} Having reviewed the entire record, we cannot conclude that the trial court clearly lost its way and created a manifest miscarriage of justice.

{¶ 57} Therefore, Grimes's second assignment of error is overruled.

## IV. Conclusion

{¶ 58} The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE

MICHELLE J. SHEEHAN, J., and
CORNELIUS J. O'SULLIVAN, JR., J., CONCUR