[Cite as *State v. Reed*, 2024-Ohio-1363.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                  :

    Plaintiff- Appellee,                     :

                                        No. 112737

        v.                                      :

CHRISTIAN REED,                                :

    Defendant-Appellant.                     :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 11, 2024

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-658295-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Alicia Paolucci, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Britta Barthol, Assistant Public Defender, *for appellant.*

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} Defendant-appellant, Christian F. Reed, appeals his convictions for abduction, a felony of the third degree, and assault, a misdemeanor of the first degree. After review of the record, we cannot say his convictions are against the

manifest weight of the evidence or that the trial court lost its way in finding Reed guilty. We affirm Reed's convictions.

## Procedural History and Relevant Facts

{¶ 2} On April 7, 2021, Reed was indicted for one count of abduction in violation of R.C. 2905.02(A)(2), a felony of the third degree, and one count of assault in violation of R.C. 2903.13(A), a misdemeanor of the first degree. On March 24, 2023, Reed waived his right to a trial by jury and tried his case to the court. The trial court found Reed guilty of the charges in the indictment and, on April 20, 2023, sentenced him to a term of community-control sanctions.

{¶ 3} At trial, the named victim in the indictments, M.G., testified that she met Reed in 2019 and they began dating in 2020. She said that Reed verbally and physically assaulted her. She and Reed planned to spend the evening of March 5, 2020, apart from each other with their respective friends. At around 9:00 p.m., Reed responded to one of M.G.'s texts. After midnight, M.G. tried to contact Reed multiple times, but Reed did not respond. M.G. was worried he was with another woman, because he had gone out with others in the past. At around 2:30 a.m., Reed answered a call from M.G. and told her to come over. He was at home with his friend Doug Auerbach.

{¶ 4} M.G. went to Reed's house. She testified that Reed and Auerbach were very intoxicated and both were using cocaine. She testified that Reed became mean and belligerent when he was drunk. After she arrived, they all had wine. She took a shower between 3:30 a.m. and 4:00 a.m. and then went to sleep in the

bedroom between 5:30 a.m. and 6:00 a.m. Reed and Auerbach were still awake and were being loud. She got up and asked Reed to go to bed. He joined her in bed and attempted to have sex with her. M.G. told him "no." She said he became enraged, accused her of sleeping with someone else and took her phone into the bathroom. M.G. followed him and asked for her phone. When he refused to give it back, she smacked the phone from his hand. She said he pushed her to the ground, got on top of her, and began to strangle her. She fought back. She got out of the bathroom and went to the living room.

{¶ 5} In the living room, Reed tackled her onto the floor and held her down by the arms. M.G. testified she thought she would die. Auerbach was on the couch, and when she was able to get away from Reed, she placed Auerbach between Reed and herself. Auerbach moved away, and Reed again tackled her to the floor. M.G. tried to get away, but Reed held her down. She testified Reed told Auerbach to leave. M.G. said she begged Auerbach for help, but he left. When Auerbach opened the door to leave, she tried to leave but Reed again pinned her down.

{¶ 6} After Auerbach left, M.G. said Reed knocked her glasses off, slammed the front door, and locked her inside. M.G. said she begged to be let go. Later, she said she was able to get out of the house through the side door and ran to the neighbor's house where she entered and yelled for help. She said Reed followed her into the neighbor's house, grabbed her, and dragged her back to his house.

{¶ 7} The neighbor, David Holcepl, testified that he heard a noise in his house that woke him up. He went downstairs, found his front door open, and looked

outside. He saw Reed dragging a woman by her arm into his house. Holcepl said there was screaming, but he didn't make out what was being said. Holcepl went back to bed. After he woke up, he saw blood on his door. He went to the police department and reported the incident. Later, after police had been to Reed's house, Reed came to talk to Holcepl. He said Reed apologized about what happened and that he was the victim in the situation. Holcepl didn't believe Reed.

{¶ 8} M.G. testified that after Reed took her into his house, he continued to attack her. She said she defended herself by stabbing Reed with a wine key. When Reed went to the bathroom, she retrieved her keys, purse, and phone. She heard Reed crying in his bedroom and went to console him. At that time, she was able to text a friend stating she needed to go to the police station. Later, she sent another text to her friend telling her she was okay and that she beat Reed up.

{¶ 9} M.G. described suffering injuries from Reed's attacks, stating she had bruises on her leg, arm, and under her chin as well as a bite mark on her finger. Photographs of those injuries were entered into evidence. After she left Reed's house, M.G. said she went home. She did not call the police or go to the police station to report the incident, but did make a report three days later.

{¶ 10} Auerbach testified that he and Reed had been friends for 30 years. On the night of the incident, he and Reed had been to a restaurant and a club and, around 2:00 a.m., they went to Reed's house. M.G. began to call Reed when they were at the house. He said M.G. came to the house at around 3:00 a.m. and that she was intoxicated when she arrived. Auerbach denied being drunk or using cocaine

and said M.G. drank a bottle of wine by herself.   He said the three of them were up until 5:00 a.m. and that he went to sleep on the couch.  He awoke to M.G. and Reed arguing in the bedroom.  They came out of the bedroom; M.G. became violent and started hitting Reed in the face with her nails and gouging at his eyes.  Reed put his arms up and pushed her away.  Auerbach said he got between them and said "enough was enough."   Reed and M.G. continued to argue, and he was uncomfortable in the situation and left around 7:00 a.m.  Auerbach described M.G. as being the physical aggressor and testified that he did not see Reed hit, choke, strangle, or pin M.G. down.  Auerbach also testified that at the time he left, he did not see any injuries on M.G.

## Law and Argument

{¶ 11} Reed's sole assignment of error reads:

Christian Reed's convictions are not supported by the weight of the evidence presented and, thereby, violate his right to due process as guaranteed by the 14th Amendment to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.

{¶ 12} Reed does not argue that there was insufficient evidence to sustain the convictions.  Instead, he argues his convictions were against the manifest weight of the evidence because M.G.'s testimony was not believable and not consistent with other witnesses' testimony.  The state argues that the trial court was in the best position to judge the credibility of M.G.'s testimony and notes that her testimony was corroborated by both the injuries sustained and the neighbor's testimony.

{¶ 13} A manifest weight challenge to a conviction asserts that the state has not met its burden of persuasion in obtaining the conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). A manifest weight challenge raises factual issues and our court's review is one in which it will, after

> "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *State v. Townsend*, 8th Dist. Cuyahoga No. 107177, 2019-Ohio-544, ¶ 20.

{¶ 14} Reed argues M.G.'s testimony was incredible because her own actions belie her status as a victim of an assault or abduction and became even more incredible when compared with Auerbach's testimony.

{¶ 15} "When we examine witness credibility, we must be mindful that 'the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.'" *State v. Williams*, 2019-Ohio-794, 132 N.E.3d 1233, ¶ 28 (8th Dist.), quoting *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). Further, we recognize that the trier of fact may accept or reject a witnesses' testimony in whole or in part. *State v. Grimes*, 8th Dist. Cuyahoga No. 110925,

2022-Ohio-4526, ¶ 53, citing *Parma v. Singh*, 8th Dist. Cuyahoga No. 106935, 2018-Ohio-5235, ¶ 21. Accordingly, inconsistencies or contradictions in a witness's testimony do not automatically entitle a defendant reversal of a trial. *State v. Solomon*, 8th Dist. Cuyahoga No. 109535, 2021-Ohio-940 at ¶ 62, citing *State v. Nitsche*, 2016-Ohio-3170, 66 N.E.3d 135, ¶ 45 (8th Dist.).

{¶ 16} Reed asserts that M.G.'s actions, by staying as long as she did at Reed's house and not calling police or reporting the incident immediately, are contradictory and undermine her credibility. He further states testimony indicates M.G. was upset with Reed and she had motive to fabricate the assault and abduction. Reed argues M.G.'s testimony was not to be believed because she said she was afraid of Reed that night but stayed in the house after she was dragged back inside when she could have left. During her testimony, we note that M.G. described a series of actions over a period of hours. And she was cross-examined on her actions and was able to explain to the trial court why she did not leave when she could have and why she did not report the events to police immediately.

{¶ 17} Reed also argues that M.G.'s testimony was contradicted by Auerbach's testimony. We note that although Auerbach described M.G. as the aggressor that night, the record reflects that after Auerbach left, M.G. said she was dragged back into the house and Holcepl testified he saw Reed dragging a woman into his house.

{¶ 18} Despite Reed's arguments, M.G.'s testimony was corroborated in part by portions of Auerbach's testimony, Holcepl's testimony, and evidence of her

injuries. The trial court heard the testimony, observed the witnesses on the stand, and was thus in the best position to weigh M.G.'s credibility and resolve conflicts in the evidence. After our review of the record, our weighing of the testimony and evidence and the inferences to be drawn, and having considered the credibility of the witnesses, we cannot say that the trial court clearly lost its way or that this case is one in which a manifest miscarriage of justice occurred.

## Conclusion

{¶ 19} We affirm Reed's convictions for abduction and assault. After reviewing the record, weighing the testimony and evidence admitted at trial and reasonable inferences deriving therefrom, and considering the credibility of witnesses, we cannot say the trial court lost its way in resolving conflicts in the evidence and testimony. Further, we cannot say this case is the exceptional case in which a manifest miscarriage of justice occurred and a new trial need be ordered.

{¶ 20} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

MARY J. BOYLE, J., and
SEAN C. GALLAGHER, J., CONCUR